DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Gregory Hilliard has appealed from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} Larry Belton was shot and killed in the early morning hours of October 30, 2004 in his apartment. Akron police immediately began their investigation by speaking with Belton's live-in girlfriend, Sheryl McCalister. McCalister was able to identify one of the men present at the time of the shooting by his nickname, Shorty Fats. In addition, McCalister identified the sole female defendant in the apartment, Kristie Guiser.
 {¶ 3} Police continued their investigation and discovered that Shorty Fats was a nickname used by Lachurn Terry. In addition, police learned that Guiser was the girlfriend of Daryl Heard, who also went by the alias Petey. As a result, the Akron police began their search for Guiser and Heard, eventually locating them with the help of U.S. Marshals. Upon being arrested, Guiser was interviewed on multiple occasions by Detectives John Bell and Michael Schaeffer. Guiser revealed to the detectives that Terry, Heard, and a man she knew only as Good Game had robbed and killed Belton. Through further investigation, police determined that Good Game was a nickname used by Gregory Hilliard. Once police had identified the final suspects, McCalister was shown photo arrays which contained Heard and Hilliard. McCalister positively identified both Hilliard and Heard from the arrays.
 {¶ 4} As a result of Belton's death, Heard, Guiser, Hilliard, and Terry were indicted on the following counts: one count of aggravated murder in violation of R.C. 2903.01(B); two counts of murder in violation of R.C. 2903.02(B); one count of aggravated robbery in violation of R.C. 2911.01(A)(1); and one count of having weapons under disability in violation of R.C. 2923.13. The charges for aggravated murder, murder, and aggravated robbery each contained a firearm specification.
 {¶ 5} On June 1, 2005, a jury trial commenced against Heard, Hilliard, and Terry. Prior to trial, Guiser had entered into a plea agreement and agreed to testify against the remaining defendants. During trial, the State primarily relied upon the testimony offered by Guiser and McCalister.
 {¶ 6} McCalister was able to positively identify each of the defendants as having been present at the house the night Belton was killed. She testified that she had a clear view of each of the defendants when they entered the apartment. McCalister continued that once the four entered the apartment, she was forced to kneel behind a recliner, but noted that she could still see Belton, Heard and Hilliard. She stated that Heard and Belton wrestled with one another until Heard called out "Good Game." McCalister continued that she then heard a shot, but did not see who had fired a weapon. McCalister then testified that Terry held her down after Belton was shot, preventing her from aiding him in any manner and obstructing her view of the defendants. McCalister concluded her testimony by noting that others ransacked the house while Terry held her down on the floor.
 {¶ 7} Guiser's testimony included the following. Hilliard and Heard entered the apartment, displaying guns, in an attempt to rob Belton. Belton began to struggle with Heard. Heard then called out to Good Game (Hilliard), who shot Belton in the hip. Heard and Hilliard then ransacked the apartment, searching for money and valuables.
 {¶ 8} The State also introduced the testimony of Summit County Chief Medical Examiner Dr. Lisa Kohler. Dr. Kohler testified that Belton died from massive internal bleeding caused by the gunshot wound. Dr. Kohler went on to testify that the bullet that entered Belton had damaged several sections of Belton's bowel, but was a treatable wound. Dr. Kohler concluded her testimony by noting that there was a good possibility that Belton could have survived the wound if he had received prompt medical attention.
 {¶ 9} Once the State rested its case, each of the defendants moved for acquittal. Each motion was denied by the trial court. The defense then rested without presenting any evidence and the defendants renewed their motions. The motions were again denied and the matter submitted to the jury. Heard and Hilliard were found guilty of each count in the indictment. Terry was found not guilty of having a weapon under disability and not guilty of the firearm specifications, but guilty of the remaining counts in the indictment. The trial court, thereafter, sentenced the defendants accordingly. Hilliard received an aggregate sentence of life in prison plus three years for the firearm specification. Hilliard has timely appealed his convictions, raising three assignments of error for review.
 II Assignment of Error Number One
"DEFENDANT HILLIARD SUFFERED FROM INEFFECTIVE ASSISTANCE OF COUNSEL * * *."
 {¶ 10} In his first assignment of error, Hilliard has argued that his trial counsel was ineffective. We find that Hilliard's contentions lack merit.
 {¶ 11} A claim of ineffective assistance of counsel requires Hilliard to satisfy a two prong test. First, he must prove that trial counsel's performance was deficient. Strickland v.Washington (1984), 466 U.S. 668, 687. That is, Hilliard "must show that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed Appellant by the Sixth Amendment." State v. Srock, 9th Dist. No. 22812, 2006-Ohio-251, at ¶ 20, citing Strickland, 466 U.S. at 687. Second, Hilliard must "demonstrate that he was prejudiced by his trial counsel's deficient performance." Srock at ¶ 21. Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011,110 S.Ct. 3258, 111 L.Ed.2d 768. Further, this Court need not analyze both prongs of the Strickland test if we find that Hilliard failed to prove either. State v. Ray, 9th Dist. No. 22459,2005-Ohio-4941, at ¶ 10. Finally, Hilliard must overcome the strong presumption that licensed attorneys in Ohio are competent.State v. Smith (1985), 17 Ohio St.3d 98, 100.
 Speedy Trial {¶ 12} Hilliard has argued on appeal that his trial counsel's ineffectiveness deprived him of the ability to dismiss the charges against him due to violations of his speedy trial rights. Specifically, Hilliard has asserted that his original trial date was set outside the time-period allowed by Ohio's Speedy Trial Act. Hilliard has contended that but for his trial counsel filing a motion to suppress the results of a photo array, his speedy trial rights would have been violated, requiring dismissal of the charges against him. We find that such an argument lacks merit.
 {¶ 13} In order for Hilliard to demonstrate prejudice, this Court would be required to presume that both the trial court and the State would have, at some point in the future, violated Hilliard's right to a speedy trial. This Court would be forced to presume that neither the State nor the trial court would have taken action upon realizing that Hilliard's speedy trial rights were going to be violated. We decline to adopt such a position. Accordingly, this Court declines to indulge in Hilliard's presumption that the trial court and the State would have sat idly by and permitted the murder charges against Hilliard to be dismissed due to a violation of his speedy trial rights.
 {¶ 14} Furthermore, we cannot subscribe to Hilliard's view that "the only purpose the motion to suppress served was to defeat Hilliard's statutory right to have the charges dismissed." Hilliard's trial counsel explained that he initially filed the motion because he was unclear which procedures the detectives used when Hilliard was identified. After speaking with the detectives, Hilliard's trial counsel found that his motion lacked merit and withdrew the motion. Consistent with the analysis below, we find that Hilliard's counsel did not err in withdrawing the motion.
 Withdrawal of Motion to Suppress {¶ 15} Hilliard has next argued that his counsel was ineffective when he withdrew a meritorious motion to suppress Hilliard's identification. We find that such an argument lacks merit.
 {¶ 16} Ohio has adopted the United States Supreme Court's two-part analysis for assessing a photo array: (1) whether the identification was unnecessarily suggestive of the suspect's guilt, and (2) whether the identification was ultimately unreliable under the circumstances. See State v. Waddy (1992),63 Ohio St.3d 424, 438-39. The United States Supreme Court has set forth a standard of review:
"[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States (1968), 390 U.S. 377, 384.
The Court offered the following rationale for such a high threshold:
"The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." Id.
 {¶ 17} In addition, the Ohio Supreme Court has provided the factors this Court must examine to determine the reliability of the identification.
"In order to determine the reliability of the identification, we must consider (1) the witness's opportunity to view the defendant at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification." (Citations omitted.) State v. Davis (1996), 76 Ohio St.3d 107,113.
 {¶ 18} We begin by noting that Hilliard has not claimed that the photo array was unduly suggestive. While later in his brief Hilliard asserts that a signature was already on the back of the array when McCalister received it, Hilliard has not expanded on that argument. He has offered no evidence that McCalister saw that signature, nor has he asserted that the signature in some manner influenced McCalister's identification. Rather, he has claimed that under the totality of the circumstances, the identification by McCalister was unreliable. This Court finds no merit in such a claim.
 {¶ 19} Hilliard has argued that McCalister did not have the opportunity to view the suspects. Hilliard, however, has ignored the testimony given by McCalister at trial. McCalister testified that she clearly saw the individuals who entered Belton's apartment. McCalister testified that she was sitting in a chair in the living room when the defendants entered the apartment. McCalister further testified that while kneeling near a recliner in the living room, she witnessed Belton fight with Heard and then heard a gunshot. Additionally, McCalister testified that the apartment was quite small and that her view of the defendants was unobstructed.
 {¶ 20} Under the factors outlined in Davis, McCalister's identification was admissible. McCalister had a clear view of Hilliard during the commission of the crime and her testimony indicated a high degree of attention to her surrounding. Further, the detectives testified that McCalister was very decisive when identifying Hilliard, stating that she would never forget his eyes. Additionally, McCalister was subject to the rigorous form of cross-examination, discussed by the Simmons Court as a safeguard against misidentification, by three different defense attorneys. While four months elapsed before McCalister was asked to identify Hilliard, we find that the remaining factors outweigh such a delay. See Neil v. Biggers (1972), 409 U.S. 188, 200-01,93 S.Ct. 375 (finding that other factors outweighed a seven-month gap between the crime and the identification). Accordingly, Hilliard's trial counsel did not err when he failed to challenge McCalister's identification.
 Cross-Examination {¶ 21} Hilliard has next argued that his trial counsel was ineffective for failing to effectively cross-examine McCalister regarding her identification. We disagree.
 {¶ 22} Despite Hilliard's contentions otherwise, McCalister never wavered in her identification of Hilliard. Detectives testified that she immediately chose him from the photo array, stating that she would never forget his eyes. In addition, during trial, McCalister properly identified Hilliard, a fact noted by the trial court. Hilliard contends, however, that McCalister never said his name during her in-court identification. The trial court record, however, indicates that the trial court required McCalister to describe the clothing of the defendant before acknowledging that McCalister was gesturing toward Hilliard. On appeal, Hilliard has not asserted that McCalister was in fact pointing at another individual, nor has he asserted that McCalister's clothing description was not accurate. Furthermore, McCalister was cross-examined by attorneys for all three of the defendants and her credibility was challenged by all three defendants. The jury, however, chose to find Hilliard's testimony reliable. Accordingly, it is unclear what further questions Hilliard's counsel could have asked that would have altered the result in his trial. Finally, this Court finds Hilliard's counsel's decision to not recross-examine McCalister falls within the realm of a debatable trial tactic and thus is not ineffective assistance of counsel. State v. Clayton (1980),62 Ohio St.2d 45, 484-9. As noted, McCalister had been repeatedly cross-examined. Hilliard's counsel's decision to not further examine the girlfriend of the murder victim is a viable trial tactic. Accordingly, we find that Hilliard's counsel did not err during his examination of McCalister.
 Failure to Join in Motion for Mistrial {¶ 23} Hilliard has also argued that his counsel was ineffective for failing to join in a co-defendant's motion for a mistrial. With respect to this argument, Hilliard has not met his burden on appeal. See App.R. 16(A)(7).
 {¶ 24} In the trial court, one of the co-defendants moved for a mistrial when a witness mentioned a polygraph. The trial court denied the motion, struck the testimony, and immediately gave an instruction to the jury to ignore the testimony. On appeal, Hilliard has not raised any argument challenging the trial court's denial of the motion for a mistrial. "If an argument exists that can support [Appellant's contentions], it is not this court's duty to root it out." Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 18673, at 22. Hilliard, therefore, has failed to demonstrate any prejudice from his trial counsel's decision to not join in the motion for a mistrial.
 Failure to Stipulate {¶ 25} Finally, Hilliard has asserted that his counsel erred when he failed to stipulate to Hilliard's prior convictions. This Court finds that Hilliard's assertion lacks merit.
 {¶ 26} In support of his argument, Hilliard has relied uponOld Chief v. United States (1997), 519 U.S. 172. This Court has previously discussed the impact of Old Chief on the State's ability to refuse to accept a stipulation, holding as follows:
"[The defendant's] reliance on Old Chief is misplaced for three reasons. First, Old Chief construed a federal statute and, therefore, is not binding upon this Court's interpretation of an Ohio statute. Second, unlike Kole, the defendant in OldChief timely objected to the prosecution's introduction of his prior conviction into evidence. Third, the federal statute construed in Old Chief is facially dissimilar to the Ohio statute in the case at bar. In Old Chief the charge was assault with a dangerous weapon in violation of 18 U.S.C. 922(g)(1) which makes it unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year [to] possess * * * any firearm." In the instant case, an essential element of the indicted offense of having a weapon while under disability is whether the individual possessing the weapon was previously convicted of a felony offense of violence. Unlike the federal statute in Old Chief, evidence concerning the name or nature of [the defendant's] prior conviction was necessary in order for the jury to find [him] guilty of the charged offense. In order to prove the offense of having a weapon while under a disability the state was required to prove the prior conviction beyond a reasonable doubt. (Internal citations omitted.) State v. Kole (June 28, 2000), 9th District No. 98CA007116, at 8-9, overruled on other grounds by State v. Kole
(2001), 92 Ohio St.3d 303.
Accordingly, under Ohio law, "[n]either the state nor the trial court is required to accept a defendant's stipulation as to the existence of the conviction." State v. Smith (1990),68 Ohio App.3d 692, 695. Hilliard's counsel's decision not to seek a stipulation, therefore, falls within the range of debatable trial tactics and does not constitute ineffective assistance of counsel. State v. Robinson (1996), 108 Ohio App.3d 428, 433
(holding that defense counsel is not required to file meritless motions in an effort to avoid claims of ineffective assistance of counsel).
 Cumulative Effect {¶ 27} Hilliard has argued that the cumulative effect of his trial counsel's errors mandate a reversal of his conviction. As noted herein, however, Hilliard has not demonstrated prejudice from any of the alleged errors of his counsel. Hilliard, therefore, has not demonstrated that taking these alleged errors in the aggregate would lead to a reasonable probability of a different outcome in the trial court. Accordingly, Hilliard's first assignment of error lacks merit.
 Assignment of Error Number Two
"THE PROSECUTION FAILED TO PRODUCE SUFFICIENT EVIDENCE OF THE ELEMENTS OF THE CRIMES AND THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE"
 {¶ 28} In his second assignment of error, Hilliard has argued that the trial court erred in denying his Crim.R. 29 motion. Specifically, he has argued that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. We disagree.
 {¶ 29} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v. Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id, at paragraph two of the syllabus; see, also,Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
"[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at 4. (Emphasis omitted).
Accordingly, we address Hilliard's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 30} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court. Karchesv. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 31} Hilliard was convicted of aggravated murder in violation of R.C. 2903.01(B) which provides as follows:
"No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape."
On appeal, Hilliard has asserted that the State failed to prove the "purposely" element of the crime of aggravated murder. Additionally, he has urged that he was misidentified as the perpetrator and that no physical evidence links him to the crime scene. We find that Hilliard's arguments lack merit.
 {¶ 32} "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). Further, because a defendant's mental state is difficult to demonstrate with direct proof, it may be "inferred from the surrounding circumstances." State v. Logan (1979),60 Ohio St.2d 126, 131. In the instant matter, this Court cannot say that the jury lost its way in concluding that Hilliard acted purposefully in causing the death of Belton.
 {¶ 33} In State v. Seiber (1990), 56 Ohio St.3d 4, the Supreme Court rejected the argument now raised by Hilliard. Id. at 13-14. In Seiber, the defendant urged that he had shot the deceased in the back, a wound that was not necessarily fatal. Id. at 13. The Seiber Court found that the use of a firearm, from close range, coupled with the defendant's actions which restrained others from helping the victim, established that the defendant had acted purposely. Id. at 131-4. We are presented with analogous facts herein. The State presented evidence that Hilliard shot Belton from close range. Terry then prevented McCalister from aiding Belton. Even though Belton was shot in the hip, "[a] firearm is an inherently dangerous instrumentality, the use of which is likely to produce death." State v. Seiber
(1990), 56 Ohio St.3d 4, 14, quoting State v. Widner (1982),69 Ohio St.2d 267, 270. Further, the testimony of Summit County Medical Examiner Dr. Lisa Kohler supports the jury's finding of purpose. Dr. Kohler testified that there was a strong possibility that Belton could have survived his wound if he had received immediate medical attention. Finally, there is no support in the record for Hilliard's contention that there was a struggle over a firearm. While Guiser testified that both Hilliard and Heard displayed guns upon entering the apartment, no testimony was elicited that Belton and Heard fought over a firearm. Guiser simply testified that Belton and Heard were struggling when Heard called out to Hilliard. The evidence introduced at trial indicates that Hilliard responded to that call and shot Belton. While Hilliard did not perform each of the acts himself, i.e., he was aided by his accomplices, "[p]articipation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." State v. Pruett (1971),28 Ohio App.2d 29, 34. Accordingly, Hilliard's acts, along with those of his accomplices, evidence a specific intention to cause Belton's death. Belton was shot at close range by a deadly weapon and the defendants collectively prevented McCalister from contacting medical personnel. We, therefore, cannot say that the jury lost its way in finding that Hilliard purposely caused Belton's death.
 {¶ 34} Hilliard has next argued that he was misidentified as the perpetrator. As noted herein, McCalister immediately identified Hilliard as one of the defendants present at the scene and this Court has found that identification to be reliable. See, supra, ¶ 20.
 {¶ 35} Hilliard has also contended that Guiser's identification was unreliable. This argument is also unpersuasive. It is undisputed that Guiser's credibility was heavily at issue during the trial. The defendants, through cross-examination, established that Guiser was a chronic drug addict and that her cognitive ability had been impaired by the consistent use of marijuana, heroin, and cocaine. The defendants further introduced substantial evidence that the details Guiser gave to the police changed throughout her interviews. One fact, however, remained consistent throughout Guiser's pretrial statements and her trial testimony: she was present in the apartment with the three defendants, Terry, Heard, and Hilliard. Guiser consistently identified Good Game as being the shooter and identified Hilliard as Good Game without hesitation when a photo array was presented. Accordingly, we cannot agree with Hilliard's claim that with her shortfalls, Guiser's identification of Hilliard was not credible. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus (holding that determinations of credibility are primarily for the trier of fact).
 {¶ 36} Finally, Hilliard contends that he must have been mistakenly identified because no physical evidence linked him to the crime scene. Hilliard, however, ignores the testimony given by BCI analysts. These analysts testified that no usable fingerprints were recovered from the apartment. The analysts went on to note that not even fingerprints from Belton or McCalister, who were living at the apartment, were recovered. The analysts noted that this was not uncommon because fingerprints are very fragile and because not every surface preserves fingerprints.
 {¶ 37} Accordingly, as the State provided the testimony of two witnesses who unequivocally identified Hilliard, we cannot say that the jury lost its way in convicting Hilliard of aggravated murder. Hilliard's second assignment of error, therefore, lacks merit.
 Assignment of Error Number Three
"THE TRIAL COURT ERRED BY DENYING DEFENSE COUNSEL'S REQUEST TO INSPECT THE BODY TO REBUT THE IDENTIFICATION OF DEFENDANT AND BY ALLOWING HEARSAY WITHIN HEARSAY TESTIMONY ABOUT IDENTIFICATION."
 {¶ 38} In his final assignment of error, Hilliard has argued that the trial court erred with regard to several evidentiary rulings. Specifically, Hilliard has asserted that the trial court erred when it refused to allow him to demonstrate that he did not have tattoos and when it permitted hearsay testimony to be introduced. We find that both of Hilliard's arguments lack merit.
 {¶ 39} A trial court possesses broad discretion with respect to the admission of evidence. State v. Maurer (1984),15 Ohio St.3d 239, 265. An appellate court will not disturb evidentiary rulings absent an abuse of discretion. State v. Roberts,156 Ohio App.3d 352, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 40} During cross-examination, Guiser stated as follows:
"I believe [Hilliard] has a tattoo somewhere on his upper body but I'm — I was trying to remember."
Defense counsel then began to question Guiser about her initial statements to the police. Counsel indicated that during her pretrial statements, Guiser had been more specific in her description, noting that "It might be a lion or a panther because I remember making fun of it." Counsel then asked if Guiser in fact remembered whether Hilliard had a tattoo, to which Guiser responded, "I think so. I'm not sure." Defense counsel then followed up by asking whether Guiser actually remembered seeing tattoos on Hilliard. Guiser answered, "I don't remember, no." Defense counsel then requested that Hilliard be permitted to show his arms to the jury. The trial court refused the request.
 {¶ 41} Initially, we note that Hilliard unquestionably could have introduced evidence of his lack of tattoos during his case in chief. In fact, during trial Hilliard's counsel indicated that he would introduce evidence of Hilliard's initial intake form through a deputy. During his case in chief, however, Hilliard introduced no evidence. Assuming arguendo that Hilliard's decision to decline to introduce the evidence during his case in chief did not waive this issue for appeal and assuming arguendo that the trial court erred, we find any error to be harmless beyond a reasonable doubt.
 {¶ 42} During her testimony, Guiser never indicated that the tattoo formed the basis of her identification. Rather, she chose Hilliard from a photo array. Accordingly, the issue of whether Hilliard had a tattoo would have at best served to impeach Guiser's testimony. We cannot find, however, that the trial court's refusal to permit Hilliard to show his body to the jury contributed to Hilliard's conviction.
 {¶ 43} Guiser's final response before counsel made his request indicated that she did not remember Hilliard having a tattoo. Accordingly, counsel had already demonstrated that Guiser's pretrial statements and her trial testimony were inconsistent. As noted herein, the cross-examinations of Guiser performed by the attorneys for the three defendants were rigorous and lengthy. Guiser's credibility was called into question regarding many of the details of the crime. Counsel for the defendants demonstrated that her statements changed on repeated occasions and that her ability to recall specific details was almost nonexistent. Counsel further demonstrated that Guiser's initial description of Hilliard's physical appearance was distinctly differently from Hilliard's actual physical appearance. Finally, counsel demonstrated that Guiser initially stated that Hilliard had tattoos, only to retract that statement at trial.
 {¶ 44} Additionally, as noted herein, both Guiser and McCalister placed Hilliard at the scene of the crime. McCalister's identification of Hilliard was definite and this Court has found it to be reliable. Furthermore, the jury had the opportunity to view Guiser's demeanor during her testimony and still found her identification to be credible. As Guiser's statements regarding the identification of her codefendants have remained consistent throughout her statements, we agree that Guiser's identification was credible. Accordingly, we find that any error by the trial court was harmless beyond a reasonable doubt.
 {¶ 45} Finally, Hilliard has contended that the trial court erred when it permitted hearsay testimony from Detective Schaeffer. Specifically, Hilliard has asserted that Schaeffer should not have been permitted to testify that Detective Bell received Hilliard's name from a third individual. We disagree.
 {¶ 46} Upon objection to this testimony, the trial court noted that it was not being introduced to prove the truth of the matter asserted, i.e., that Hilliard was actually Good Game. We find no error in the trial court's ruling.
 {¶ 47} As a general rule, out of court statements offered to prove the truth of the matter asserted are hearsay and are not admissible. Evid.R. 801(C); Evid.R. 802. Statements offered to explain a police officer's conduct while investigating a crime, however, are not hearsay. State v. Price (1992),80 Ohio App.3d 108, 110. Such is true because these statements are not offered for their truth, but as an explanation of the process of investigation. See State v. Braxton (1995), 102 Ohio App.3d 28,49. "It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." Statev. Thomas (1980), 61 Ohio St.2d 223, 232. Herein, the State introduced evidence of extrajudicial statements to explain why Detectives Bell and Schaeffer began to investigate Hilliard. Accordingly, the trial court did not err in permitting the testimony.
 {¶ 48} Hilliard's final assignment of error, therefore, lacks merit.
 III {¶ 49} Hilliard's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Slaby, P.J. concurs.