[Cite as *State v. Mango*, 2016-Ohio-2935.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103146**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RONALD MANGO, JR.

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589808-A

**BEFORE:** McCormack, J., Keough, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** May 12, 2016

**ATTORNEY FOR APPELLANT**

P. Andrew Baker
11510 Buckeye Road
Cleveland, OH 44104


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Joan M. Bascone
Mary M. Dyczek
Assistant County Prosecutors
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Ronald Mango, Jr., appeals his conviction for felonious assault. For the reasons that follow, we affirm.

{¶2} On October 2, 2014, Mango was indicted, along with codefendants, in a six-count indictment: Count 1 — aggravated robbery in violation of R.C. 2911.01(A)(3); Count 2 — felonious assault in violation of R.C. 2903.11(A)(1); Count 3 — kidnapping in violation of R.C. 2905.01(A)(3); Count 4 — kidnapping in violation of R.C. 2905.01(A)(2); Count 5 — theft in violation of R.C. 2913.02(A)(1); and Count 6 — ethnic intimidation in violation of R.C. 2927.12(A).

{¶3} Mango waived his right to a jury trial, and the case was tried to the bench on April 23, 2015.[1] At trial, the state presented the testimony of the victim, Thomas McGill ("McGill"), Cleveland Police Detective Steven Loomis, Cleveland Police Officers Timothy Angelone and Daniel Smith, and Registered Nurse Chris Seabold.

{¶4} The case stems from an incident that occurred on September 25, 2014. On this evening, McGill entered the Home Town Grocery store in Cleveland to purchase cigarettes and other items. McGill testified that when he stood at the counter to pay for his purchase, a man approached McGill, placed his hand in McGill's front shirt pocket, and removed his cash. He did not say anything for fear of causing trouble. He testified

---

[1] Mango was tried along with codefendant Steafon Hudson, who was convicted of felonious assault (Count 2) and theft (Count 5). Hudson appealed his sentence on June 18, 2015. For a review of this companion case, *see State v. Hudson*, 8th Dist. Cuyahoga No. 103154.

that he was afraid. After making his purchase, he exited the front door of the store and proceeded to turn right into the parking lot to walk home. McGill testified that the next thing he remembered is awaking at St. Vincent Charity Medical Center, "hurting real bad" in his lower back, his left side, and his head. He stated also that his eye, face, and lip were swollen and his arms "look[ed] like [he] was drug across the parking lot." McGill was discharged from St. Vincent Charity, but after arriving home, he was transported by emergency medical services to MetroHealth Medical Center, where he was treated and released the next evening.

{¶5} Detective Loomis testified that he received a call to respond to Home Town Grocery regarding an incident that occurred that evening. Upon arriving on the scene, Detective Loomis viewed video surveillance from the grocery store that captured an assault on McGill by several individuals. Detective Loomis identified Ronald Mango as one of the individuals participating in the attack. The detective stated that the video shows Mango standing in an "aggressive boxer's stance," punching McGill in the face two times. The first punch knocked McGill to the ground, while the second punch was rendered while McGill was lying on the ground. McGill did not fight back; rather, he attempted to stand up and walk away. The video shows that when McGill attempted to get off the ground and walk away, he staggered, lost his balance, and fell twice, hitting his head on the surface of the parking lot. McGill is also seen on the video repeatedly wiping blood away from his face. Finally, the video shows McGill stagger toward a path, or a "cut," in the northeast corner of the parking lot toward his home.

{¶6} Detective Loomis learned that the store owner believed McGill lived in the apartment complex behind the store. After viewing the videotape, Detective Loomis directed Officers Angelone and Smith to search for McGill at the apartment complex and in the fields between the building and the complex.

{¶7} Officer Angelone and his partner, Officer Smith, proceeded to the apartment complex in search of McGill. They received permission to enter the apartment complex from a crowd of people gathered outside the building. The officers testified that the group of people advised the officers that they saw a middle-aged, white man, who was bleeding very badly, enter the building. The officers followed a trail of blood inside the complex that led to McGill's apartment door. Officer Angelone testified that when McGill approached him at the door, McGill was "holding his face with a rag and blood was dripping from his face" and he appeared to be in shock. Officer Smith testified that McGill seemed "disoriented" and was bleeding very badly. The officers called for an emergency medical technician to examine McGill because his condition was severe.

{¶8} After EMS transported McGill to the hospital, Officers Angelone and Smith continued to search for the suspects. After receiving good descriptions from Detective Loomis, the officers successfully located and arrested three of the suspects, one of whom was Ronald Mango.

{¶9} Detective Loomis further testified that after the suspects were arrested, he drove to St. Vincent Charity in order to interview McGill; however, upon arriving at the

hospital, the detective learned that McGill had been released. He testified that in light of the beating McGill had sustained, he was surprised that McGill had been discharged. Detective Loomis then spoke with the emergency room doctor who had treated McGill and allowed the doctor to view the video of the assault. Detective Loomis testified that the doctor now became concerned about McGill's head trauma and instructed the detective to locate McGill and have him transported to MetroHealth hospital for further examination.

{¶10} Chris Seabold, the nurse assigned to the triage area at MetroHealth hospital the evening EMS transported McGill for treatment, testified that McGill presented with bruising and swelling of the eye and multiple abrasions, and he complained of pain in the head, face, elbow, and rib. Seabold's notes also indicate that McGill had a hematoma on the top of his head and there was tenderness around his right eye. Seabold also stated that in reviewing the notes from the emergency room doctor at St. Vincent Charity, he noted that there was some concern regarding the likelihood of a loss of consciousness.

{¶11} McGill testified that he remains in "a lot of pain most of the time" and he is "paranoid to go outside anymore." He stated that he is now "messed up in the head * * * I stay in the house. I don't want to go anywhere. I don't want to go outside," and he asks someone to get his food or he asks someone to walk with him to the grocery store. He still experiences pain on the entire left side of his body and his lower back just above his waist. He cannot work because of the pain. He testified that after a few minutes of working, he cannot move, and he cannot stand up straight if he has been bent over doing

some light lifting.  McGill testified that he has never returned to Home Town Grocery store.

**{¶12}** The state presented the following exhibits at trial:   medical records from St. Vincent Charity Medical Center and MetroHealth Medical Center; pictures of McGill's face and arm, indicating injuries McGill sustained; and videotape recording of three scenes at the Home Town Grocery store.

**{¶13}** After the state rested, the court granted Mango's Crim.R. 29 motion to dismiss the charges of kidnapping in Counts 3 and 4 and the ethnic intimidation in Count 6.   The court found Mango not guilty of aggravated robbery in Count 1 and theft in Count 5.   Finally, the court found Mango guilty of the sole remaining charge of felonious assault as charged in Count 2.   The trial court sentenced Mango on Count 2 to two years in prison.

**{¶14}** Mango now appeals his conviction, assigning three errors for our review:

I.      The trial court erred in allowing a conviction when there was ineffective assistance of counsel under *Strickland v. Washington*.

II.     The trial court erred in allowing a conviction when there was ineffective assistance of counsel due to defense counsel's failure to file a response to discovery.

III.    The trial court erred in allowing a conviction for felonious assault when a conviction is against the manifest weight of the evidence.

Ineffective Assistance of Counsel

**{¶15}** In his first assignment of error, Mango contends that trial counsel was ineffective for failing to file a motion to dismiss for violation of his speedy trial rights.

In his second assignment of error, Mango claims that trial counsel was ineffective for failing to respond to the state's request for discovery. We address the assignments of error together.

{¶16} In order to establish a claim of ineffective assistance of counsel, the defendant must show that his trial counsel's performance was deficient in some aspect of his representation and that deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), *cert. denied*, 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768 (1990). Counsel's performance will be considered deficient only when that performance falls below an objective standard of reasonableness. *Strickland* at 688. Under *Strickland*, our scrutiny of an attorney's representation must be highly deferential and we must indulge "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 689. And in Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

{¶17} In order to show prejudice, a defendant must demonstrate that there is a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 12. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome" of the proceeding. *Strickland* at 694.

**{¶18}** Generally, the failure to raise the violation of speedy trial rights in the trial court constitutes a waiver of the defense on appeal.[2] However, a defendant may raise a speedy trial claim in the context of a claim of ineffective assistance of counsel. *Cleveland v. White*, 8th Dist. Cuyahoga No. 99375, 2013-Ohio-5423, ¶7. And in order to demonstrate that counsel provided ineffective assistance of counsel by failing to file a motion to dismiss for speedy trial violations, the defendant must show that the motion would have been successful and the case would likely have been dismissed. *Id.* "Counsel cannot be [ineffective] for failing to file a fruitless motion." *State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241 and 11CA3242, 2012-Ohio-4583, ¶ 8.

**{¶19}** Under R.C. 2945.71(C)(2), the state must bring a defendant to trial on felony charges within 270 days of arrest. Under the "triple count provision" contained in R.C. 2945.71(E), each day a defendant is held in jail in lieu of bail counts as three days in the speedy trial time calculation. Therefore, a defendant held in jail without bail on a pending felony charge must be tried within 90 days. The statutory speedy trial period begins to run on the date the defendant is arrested, although the date of arrest is not counted when calculating speedy trial time. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 44.

---

[2] Mango filed a pro se motion to dismiss for lack of speedy trial on March 31, 2015. On April 23, 2015, the court denied the motion as improper for failing to serve the prosecutor. We note, additionally, that where a criminal defendant, who is represented by counsel, files a pro se motion, "'and there is no indication that defense counsel joins in those motions or indicates a need for the relief sought by the defendant pro se,'" the pro se motions are not proper and the trial court may strike them from the record. *State v. Wyley*, 8th Dist. Cuyahoga No. 102889, 2016-Ohio-1118, ¶ 9, quoting *State v. Davis*, 10th Dist. Franklin No. 05AP-193, 2006-Ohio-5039, ¶ 12.

**{¶20}** Speedy trial time may, however, be tolled by certain events delineated in R.C. 2945.72. Such tolling events include "[a]ny period of delay occasioned by the neglect or improper act of the accused," any period of delay "necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused, and any continuances granted upon the accused's own motion," and a "period of any reasonable continuance granted" upon any other party's motion. R.C. 2945.72(D), (E), and (H). A defendant's demand for discovery tolls the speedy trial time until the state responds to the discovery, or for a reasonable time, whichever is sooner. *State v. Shabazz*, 8th Dist. Cuyahoga No. 95021, 2011-Ohio-2260, ¶ 26, 31; R.C. 2945.72(E).

**{¶21}** The Ohio Supreme Court has held that the failure of a criminal defendant to respond within a reasonable time to a prosecution's request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D). *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, paragraph one of the syllabus; *see also Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, at ¶ 23. What constitutes a reasonable amount of time by which a defendant should have responded to a reciprocal discovery request shall be determined by the trial court, based upon the totality of facts and circumstances in the case and the time established by local rule, if applicable. *Id.* at paragraph three of the syllabus. This court has also interpreted "reasonable response time" to mean 30 days. *See Shabazz* at ¶ 26; *State v. Byrd*, 8th Dist. Cuyahoga No. 91433, 2009-Ohio-3283, ¶ 9; *State v. Barb*, 8th Dist. Cuyahoga No. 90768, 2008-Ohio-5877, ¶ 9.

**{¶22}** Therefore, under *Palmer*, the period of time that constitutes neglect is the period of time after the reasonable response time. *Geraci* at ¶ 25. As such, where a defendant fails to respond to the state's request for reciprocal discovery, speedy trial time is tolled after such "reasonable time" for the defendant's response has passed. *Id.*, citing *State v. Gibson*, 8th Dist. Cuyahoga No. 100727, 2014-Ohio-3421, ¶ 23.

**{¶23}** Here, Mango was arrested on September 26, 2014, indicted on October 2, 2014, and in custody on October 8, 2014. On October 9, 2014, Mango's counsel filed a demand for discovery, request for evidence, and motion for bill of particulars. On October 15, 2014, the state responded to Mango's discovery and filed its own demand for discovery. The record demonstrates that Mango never responded to the state's discovery request. There is no indication in the record as to why Mango failed to respond to the state's reciprocal discovery, thus offering no extenuating circumstances for the court to consider. Therefore, in allowing for a reasonable response time of 30 days, Mango's speedy trial time was tolled after November 15, 2014, until the time of trial. Accordingly, Mango's statutory speedy trial rights were not violated. And because there was no speedy trial violation, trial counsel was not ineffective for failing to move the court for dismissal of the charges against Mango based upon speedy trial grounds. *White*, 8th Dist. Cuyahoga No. 99375, 2013-Ohio-5423, at ¶ 7; *State v. Andrews*, 8th Dist. Cuyahoga No. 92695, 2010-Ohio-3499, ¶ 50 (where there was no violation of defendant's speedy trial rights, defense counsel's decision not to file a motion to dismiss based upon

the expiration of the speedy trial time was sound trial strategy and did not support claim of ineffective assistance of counsel).

{¶24} Mango also contends that trial counsel was ineffective for failing to respond to the state's request for discovery. In support, he claims that counsel's failure to respond prevented counsel from raising a viable speedy trial argument, as Mango's trial commenced well beyond his speedy trial time. In making this argument, Mango provides, in effect, that had counsel responded to discovery, this tolling event would have ceased and, therefore, his speedy trial time would have expired before trial. Mango's argument, however, is pure speculation.

{¶25} First, Mango assumes that there would have been no other tolling events that would have extended the speedy trial clock beyond the scheduled trial date. The record in this case, however, demonstrates that there was ongoing discovery and numerous tolling events. The state filed supplemental discovery responses on six different occasions: October 23, 2014, November 10, 2014, November 17, 2014, February 2, 2015, February 4, 2015, and March 2, 2015. Pretrials were continued at the defendant's request on six occasions: October 20, 2014, October 31, 2014, November 5, 2014, November 13, 2014, December 9, 2014, and February 2, 2015. The reasons stated for the continuances included plea negotiations and ongoing discovery. On February 3, 2015, Mango viewed a video with counsel. And on March 31, 2015, and April 15, 2015, Mango filed a total of five different pro se motions, which also tolled the speedy trial clock. *See State v. Pipkins*, 8th Dist. Cuyahoga No. 101624, 2015-Ohio-1823, ¶ 25.

**{¶26}** Second, Mango also assumes that the trial court would not have rescheduled the trial within the speedy trial time period in order to avoid a speedy trial violation. A trial court has the inherent authority to control its own docket and trial schedule. *State v. Rocha*, 8th Dist. Cuyahoga No. 99826, 2014-Ohio-495, ¶ 11, citing *State v. Powell*, 49 Ohio St.3d 255, 259, 552 N.E.2d 191 (1990). Assuming the trial court would not reschedule the trial under these circumstances is therefore mere speculation and is insufficient for purposes of establishing prejudice. *Rocha*; *State v. Hilliard*, 9th Dist. Summit No. 22808, 2006-Ohio-3918, ¶ 13 (in finding no prejudice to support an ineffective assistance of counsel claim, the reviewing court declined to indulge in the defendant's presumption that the trial court and the state "would have sat idly by and permitted the * * * charges against [the defendant] to be dismissed due to a violation of his speedy trial rights"). Moreover, in order to establish a claim of ineffective assistance of counsel, prejudice must be affirmatively shown; it cannot be presumed. *State v. Saultz*, 4th Dist. Ross No. 09CA3133, 2011-Ohio-2018, ¶ 21.

**{¶27}** Accordingly, we find that Mango has failed to show prejudice. We cannot say that there was a strong probability that but for counsel's failure to respond to the state's discovery request, the outcome would have been different, i.e. his speedy trial time would have expired before trial and the charges against him would have been dismissed.

**{¶28}** Mango's first and second assignments of error are overruled.

Manifest Weight of the Evidence

**{¶29}** In his third assignment of error, Mango argues that his conviction for felonious assault is against the manifest weight of the evidence. Mango claims that the state failed to prove that he caused the victim serious physical harm.

**{¶30}** A claim that a conviction is against the manifest weight of the evidence questions whether the prosecution met its burden of persuasion. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). This type of challenge necessarily raises a factual issue:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶31}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. And a factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶32}** Mango was convicted of felonious assault in violation of R.C. 2903.11(A)(1), which provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *." A person acts knowingly, regardless of his or her

purpose, "when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

"Serious physical harm" includes any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain._

R.C. 2901.01(A)(5).

{¶33} "The degree of harm that rises to the level of 'serious' physical harm is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.'" *State v. Miller*, 8th Dist. Cuyahoga No. 98574, 2013-Ohio-1651, ¶ 18, quoting *State v. Irwin*, 7th Dist. Mahoning No. 06MA20, 2007-Ohio-4996, ¶ 37._

{¶34} "Where injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5)." *State v. Lee*, 8th Dist. Cuyahoga No. 82326, 2003-Ohio-5640, ¶ 24, citing *State v. Wilson*, 8th Dist.

Cuyahoga No. 77115, 2000 Ohio App. LEXIS 4295 (Sept. 21, 2000); *accord State v. Tolle*, 12th Dist. Clermont No. CA2014-06-042, 2015-Ohio-1414.

{¶35} Here, the evidence shows that Mango's first punch caused McGill to fall to the ground. Mango then punched McGill while McGill was lying on the ground. Once McGill successfully got to his feet, he staggered, lost his balance, and fell to the ground again, hitting his head on the concrete parking lot. Upon McGill's second attempt to get up, he once again, lost his balance and fell, hitting his head on the concrete for the second time. When McGill was finally able to walk away from the grocery store, the evidence shows McGill continued to stagger away.

{¶36} Additionally, the investigating officers testified that they followed a trail of blood in the apartment building to McGill's apartment door in order to locate him. Further, McGill's injuries resulted in treatment at two different hospitals, and there was a concern regarding head trauma and the possible loss of consciousness. Nurse Seabold testified that McGill's eye was swollen and bruised and he had multiple abrasions on his face and elbow. McGill testified that he has no memory from the time of the assault to awaking in the hospital; he is in constant pain; he is unable to work because of the pain; and he is afraid to leave his apartment.

{¶37} In light of the above, we will not disturb the trial court's finding that Mango caused serious physical harm to the victim. This case is not one of the exceptional cases in which the evidence weighs heavily against the conviction.

{¶38} Mango's third assignment of error is overruled.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MELODY J. STEWART, J., CONCUR