[Cite as *State v. Rivera*, 2013-Ohio-3244.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No. 99185

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## MARCOS RIVERA

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-562101

**BEFORE:** McCormack, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** July 25, 2013**ATTORNEY FOR**

**APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Avenue
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Jeffrey S. Schnatter
Assistant County Prosecutor
9th Floor, Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Marcos Rivera ("Rivera"), appeals from his conviction after the trial court found him guilty of domestic violence. For the reasons that follow, we affirm the trial court.

## Substantive Facts and Procedural History

{¶2} On May 22, 2012, Marcos Rivera was indicted on three counts of endangering children in Counts 1, 2, and 3, and one count of domestic violence in Count 4. Codefendant, Nichole Langmack ("Langmack"), was also charged. Prior to trial, the court conducted a competency hearing regarding the child victim, N.L. Over the objection of Rivera's counsel, the court found N.L. competent to testify. Rivera and Langmack waived a jury, and the case proceeded to trial on October 10, 2012.[1] {¶3}

At trial, N.L., who was five years old at the time of the trial, testified that his mother is "mommy" or "Nichole" (codefendant Langmack); his grandmother is "maw-maw" or "mama" (Langmack's mother); his biological father, James Stalker ("Stalker"), is "dad" or "Jimmy"; and Rivera is "Poppy." He stated that about a year ago, in the wintertime, he lived at his old home with mommy, mama, S-1, X, and S-2. He referred to S-1, who is ten years old, as his brother. S-1's father is Poppy, and his mother is Langmack. According to N.L., Rivera is like a father to him and that is why he calls him Poppy. His younger brother, X, is two years old, and they share the same father,

---

[1] The trial court granted Langmack's Crim.R. 29 motion for acquittal as to Count 2. She was found not guilty of all remaining charges against her following a bench trial.

James Stalker. N.L. stated that he did not know his little brother S-2's father. S-2, he said, is one month old.

{¶4} In March 2012, Langmack and Stalker shared custody of N.L. Stalker had N.L. every other weekend, every other holiday, and alternating Christmases at that time. On March 9, Stalker picked N.L. up from Langmack's house. He testified that he saw a cut on his chin. He called Langmack to inquire of the cut and got no answer. Stalker testified that he and Langmack were not on speaking terms at that time. He indicated that he saw no other injuries on N.L. that weekend other than "little scrapes and tiny scratches." Shannon Morrison, Stalker's niece, testified that she noticed the abrasion on his chin and did not think it was out of the ordinary.{¶5} On March 23, Stalker again picked N.L. up for the weekend. N.L. was wearing long pants and a long sleeved shirt at the time. Stalker testified that he noticed a bruise on N.L.'s ankle when his pant leg rose up as he was getting into Stalker's car. Stalker then dropped N.L. off at his son Shane Morrison's house because he had to work that evening. While at work, Stalker received a call from Amanda Morrison, Shane's wife. Amanda told Stalker that N.L. had multiple bruises on his body. Initially, Shannon discovered bruises on N.L.'s upper and lower legs when N.L. changed into shorts. Shannon later advised Amanda about the bruises. Shannon also noted that the cut on the chin looked like it was turning into a scar. When Amanda was giving N.L. a bath, Amanda discovered the bruises for herself.

{¶6} The following morning, Stalker picked N.L. up from Shane's house. It was then that he observed N.L.'s multiple bruises for himself. After speaking to N.L.

about the bruises, Stalker went to the police station to advise the police of what he observed and learned about N.L.'s bruises. The police advised Stalker to take N.L. to the hospital. As advised, Stalker brought N.L. to the hospital for an examination.

{¶7} At the hospital, Dr. Maya Myslemski examined N.L. In the course of her examination, Dr. Myslemski noted that N.L. was pleasant and talkative and did not appear to be in physical pain or distress. Once N.L. was dressed in a hospital gown, she observed multiple bruises all over his body and a red mark on his chin.

{¶8} Dr. Myslemski testified as follows: the photographs submitted by the state fairly and accurately represent the bruising on N.L.'s thighs, arms, and back; some bruises were fresh and some were older, indicating different stages of healing; while she stated that it was difficult to determine exactly how old the bruises were, she approximated that some of the bruises were three days to one month old; some bruises were possibly accidental injuries, specifically those injuries on the front part of his body and areas of bony prominence that are typical locations for accidental injuries in children; other bruises were located in places not typical of an accidental injury and were suspicious and possibly defensive injuries, including the thigh area, backs of his legs, and both sides of the inner upper arm; and the injury on the chin was suspicious, because it was in a protected part of his face, he had no injury to his forehead, and he said he didn't fall.

{¶9} During the course of her examination of N.L., N.L. reported to Dr. Myslemski on multiple occasions that "Poppy hitting [him]." He specifically pointed to his chin. He did not, however, tell the doctor how the other injuries occurred. When the

doctor specifically asked N.L. if he fell, he replied "no." She observed no abrasions to N.L.'s hands, which would be consistent with a fall. Dr. Myslemski testified that the bruises on N.L.'s right lower leg, specifically, may have been caused by fingertips grabbing, slapping, or holding with force, due to the oval shape of the bruising.**{¶10}** Dr. Myslemski opined that many of N.L.'s injuries were consistent with nonaccidental injuries and there was possible child abuse. She based this opinion on: her examination of the bruises; the existence of multiple bruises, the location of which were consistent with nonaccidental injuries; and her discussion with N.L. during which N.L. told the doctor that he got the bruises from Poppy hitting him with his hand. The discovery that N.L. was prescribed medication for attention deficit hyperactivity disorder and was prone to fits of rage did not change her opinion.

**{¶11}** Finally, Dr. Myslemski testified that none of N.L.'s noted injuries were serious enough to be life-threatening. She stated, however, that striking a child on the torso, abdomen, chest, and back can cause organ damage, internal bleeding, and death. She further stated that children who sustain abusive injuries are at risk for future abuse and injury, possibly even more severe. While she initially stated that the bruises indicated that child abuse was "possible," she equated "possible" to "highly likely," as later indicated.

**{¶12}** N.L. did not undergo any additional treatment that day beyond his examination. In giving the discharge instruction, the doctor advised that N.L. follow up with his primary care physician in one week. N.L. was discharged and went home with

his dad, Stalker.{¶13} In response to an allegation of abuse concerning N.L., Emily Justice, a social worker, met with N.L. Ms. Justice testified that her purpose for meeting with N.L. was to assess his safety and any further medical needs, including his mental health. She testified that she observed a circular, pink mark below his lip and bruising on the front and back of his leg. She further testified that her evaluation of N.L. would include assessing whether there is a need for counseling. She testified that, in the course of determining whether counseling is appropriate, N.L. told her that Poppy hit him because he spilled his pop and he was being punished. Finally, she testified that N.L. demonstrated for her how Poppy hit him.

{¶14} According to N.L., he was at Poppy's house the week before he went to the hospital with his dad. He stated that he would sometimes spend more than one night at a time at Poppy's house. He testified that when he misbehaved at Poppy's house, Poppy would spank him or slap him with the belt. He also stated that Poppy would hit him with his hand on his "butt."

{¶15} N.L. testified that he told mommy, Detective Strickler, and the social worker, Ms. Justice the truth — that Poppy hit him because he spilled a drink. He also testified that it was a lie "because it hurts too much" and that the bruises were from falling. When asked what hurts too much, N.L. responded that Poppy "slapping and hitting me with the belt and hitting me on the butt" hurts too much. N.L. said that he lied to make the hurting stop. When asked how telling a lie would make the hurting stop,

N.L. said that he did not know. Counting on his fingers, N.L. testified that Poppy hit him six times, and "in the lie," Poppy hit him on his back and his sides.

{¶16} N.L. testified that he went to the hospital with his dad because he had bruises on both legs, his back, and a "boo-boo" on his chin. He acknowledged that the red mark present on his chin is from that same "boo-boo." When his dad asked him about the mark on his chin, N.L. told his dad that Poppy hit him. {¶17} Prior to closing arguments, the judge denied Rivera's renewed Crim.R. 29 motion for acquittal. At the conclusion of the bench trial, the court found Rivera not guilty of endangering children in Counts 1, 2, and 3. The court found Rivera guilty of domestic violence in Count 4. He was sentenced to 12-months incarceration, plus three years postrelease control, with credit for time served.

### Assignments of Error

I. The trial court erred when it found the child to be competent to testify.

II. The state failed to present sufficient evidence to sustain a conviction against appellant.

III. The state failed to present sufficient evidence to sustain a conviction against appellant because it failed to prove beyond a reasonable doubt that the child was a family or household member.

IV. The state failed to prove venue beyond a reasonable doubt.

V. Appellant's conviction is against the manifest weight of the evidence.

VI. Appellant was denied a fair trial by the trial court's ruling that his probation officer could testify.

### Competency

**{¶18}** In his first assignment of error, Rivera alleges that the trial court erred in determining that N.L. was competent to testify. For the reasons that follow, we disagree.**{¶19}** Evid.R. 601 outlines the general rule of competency for all witnesses. The rule provides that every person is competent to be a witness with the following exceptions:

> Those of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.

Evid.R. 601(A).

**{¶20}** In determining whether a child under the age of ten is competent to testify, the trial court must consider the following factors: (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify; (2) the child's ability to recollect those impressions or observations; (3) the child's ability to communicate what he or she observed; (4) the child's understanding of truth and falsity; and (5) the child's appreciation of his or her responsibility to be truthful. *State v. Ferrell*, 8th Dist. No. 92573, 2010-Ohio-1201, ¶ 59, citing *State v. Frazier*, 61 Ohio St.3d 247, 251, 574 N.E.2d 483 (1991).**{¶21}** The determination of competency is within the sound discretion of the trial judge. *Frazier* at 251. The trial judge "has the opportunity to observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully." *Id.* The trial judge must, therefore, determine through questioning whether a child under ten years of age is capable of receiving impressions of facts and events and can accurately

relate them. *Id.*, citing *State v. Wilson*, 156 Ohio St. 525, 103 N.E.2d 552 (1952). Because the trial judge is in a better position to observe the child's demeanor and appearance, it is given wide latitude in determining whether the child is competent. *In re L.M.*, 8th Dist. No. 90322, 2008-Ohio-3543, ¶ 13, citing *State v. Clark*, 71 Ohio St.3d 466, 469, 644 N.E.2d 331 (1994).

{¶22} As such, a reviewing court may not disturb the trial court's determination of competency absent a clear showing of an abuse of discretion. *State v. Kirk*, 42 Ohio App.3d 93, 94, 536 N.E.2d 391 (5th Dist.1987). An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶23} On September 28, 2012, the trial court conducted a competency hearing in order to determine whether the child victim, N.L., age five at the time of trial, was competent to testify at trial. During this hearing, the court was able to observe N.L.'s appearance, his general demeanor, and his ability to respond to the questions posed to him.{¶24} While the court acknowledged that N.L. had memory issues with respect to certain things, it found that N.L. had a good recollection of favorable memories and was able to recall with specificity many facts. The court further found, and the parties agreed, that N.L. knows the difference between the truth and a lie, and he knows there are consequences for not telling the truth. When asked if it is a truth that Sponge Bob brought him to court, N.L. replied, "no." He further stated that telling lies is a bad thing,

"because if they see what you did, they will be in jail." N.L. responded that if someone robbed a bank, the police would put them in jail.

{¶25} At the competency hearing, N.L. said that he used to know the alphabet, but not anymore. He could not remember how to spell his name, and he did not know the name of the city in which he resides. However, he knew his age and his birthday, and he recalled that he lived in a blue house with toys and a closet. He knew the colors of his clothing, the color of the judge's robe, and he could count the five fingers the judge held up. N.L. also knew that he attended school before he began living elsewhere, and he talked about his favorite thing to do at school. He was able to recall with certainty details about his birthday parties, and he reminded the judge that it was when he turned four, not five, that he received a Sponge Bob gift on his cake and the cake was vanilla and chocolate. N.L. also corrected the judge when she recited the wrong name of the person with whom N.L. is currently living.{¶26} Defense counsel objected to N.L.'s competency due to some "inconsistencies" when relating certain events. Inconsistencies in the statements of a child, however, go to the weight of the evidence and the credibility of the witness, not to the child's competency. *In re L.M.*, 8th Dist. No. 90322, 2008-Ohio-3543, ¶ 15.

{¶27} In reviewing the above, we find that the trial court did not abuse its discretion in finding N.L. competent to testify at trial. As such, Rivera's first assignment of error is overruled.

**Sufficiency of the Evidence**

{¶28} In his second and third assignments of error, Rivera contends that the state failed to present sufficient evidence to sustain a conviction for domestic violence. He further contends that the state failed to prove that N.L. was a family or household member. We find no merit to Rivera's claim. {¶29} When reviewing a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541.

{¶30} Rivera was convicted of domestic violence against N.L. He argues that the state has failed to prove that N.L. is a family or household member as defined by the statute because there is no evidence that N.L. resided with Rivera.

{¶31} "Domestic violence" is defined in R.C. 2919.25(A), which states that "No person shall knowingly cause or attempt to cause physical harm to a family or household member." R.C. 2901.01(A)(3).

{¶32} "Family or household member" is defined as follows:

(a) Any of the following who is residing or has resided with the offender:

(i) A spouse, a person living as a spouse, or a former spouse of the offender;

(ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

R.C. 2919.25(F).

{¶33} The offense of domestic violence arises out of the relationship of the parties rather than the exact living circumstances of the victim and the perpetrator. *State v. Williams*, 79 Ohio St.3d 459, 464, 1997-Ohio-79,683 N.E.2d 1126. Relationships are unique to each case and, therefore, must be decided on a case-by-case basis by the trier of fact. *Id.* {¶34} In this case, while N.L. did not permanently reside with Rivera, N.L. testified that he stays with Rivera at Rivera's house sometimes for several nights at a time, and he was at Rivera's house the week before he went to the hospital with his dad. He testified that he previously lived at his old home with mommy, mama, S-1, X, and S-2. He referred to S-1 as his brother. Rivera is S-1's father and codefendant Langmack is

the mother of both S-1 and N.L. According to N.L., Rivera is like a father to him and that is why he calls him Poppy. N.L.'s father, James Stalker, testified that N.L. would sometimes stay with Rivera on the weekends that Stalker did not have visitation. Additionally, Rivera's prior convictions for domestic violence against Langmack, N.L.'s mother, establish N.L.'s mother as a family member. By definition, Langmack's child, in this case N.L., would also be a family or household member. R.C. 2919.25(F)(a)(iii). Therefore, based cumulatively upon these facts — N.L. stays with Rivera for extended periods, including weekends that his biological father did not have visitation; N.L. has lived with Rivera's son, S-1, both of whom share the same biological mother (Langmack); Rivera is like a father to N.L., earning him the nickname "Poppy"; and N.L.'s mother has been previously established as a family member for purposes of prior domestic relations convictions against Rivera — a reasonable trier of fact could conclude that N.L. is a family member in accordance with the statute.

{¶35} Furthermore, we find also that the evidence presented at trial was sufficient to convict Rivera of domestic violence. Rivera contends that N.L.'s testimony is insufficient evidence to convict Rivera because N.L. denied that Rivera hit him, but rather, stated that he fell. However, the state presented the testimony of the social worker, Ms. Justice, and Dr. Myslemski. Ms. Justice testified that N.L. told her Poppy hit him. She testified also that N.L. demonstrated with his hand how Poppy hit him. Dr. Myslemski testified that: the injuries N.L. suffered were consistent with intentionally inflicted injuries, due to the quantity of injuries and the location of those injuries; the

injuries were not consistent with injuries sustained from a fall; and in the course of her examination of N.L., N.L. reported to Dr. Myslemski that Poppy hit him.

**{¶36}** In light of the above, we find the foregoing evidence was sufficient to support the domestic violence conviction against Rivera. Accordingly, Rivera's second and third assignments of error are overruled.**Manifest Weight**[2]

**{¶37}** In his fifth assignment of error, Rivera contends that his conviction is against the manifest weight of the evidence. For the following reasons, we disagree.

**{¶38}** Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.**{¶39}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d

---

[2] In the interest of continuity, we will address Rivera's assignments of error out of order.

120, 123, 489 N.E.2d 277 (1986). A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. No. 98538, 2013-Ohio-1184, ¶ 18.

**{¶40}** Under this assignment of error, Rivera primarily challenges the victim's credibility, contending that because of his "numerous inconsistencies," his testimony cannot be relied upon. He states that N.L. testified during trial that Rivera did not cause his bruises and his initial statements that Rivera hit him were lies. The state concedes that N.L.'s testimony was inconsistent with the physical evidence and his prior statements.

**{¶41}** The weight to be given the evidence and the credibility of a witness, however, rests solely with the factfinder — in this case, the trial judge. Here, the trial judge had the opportunity to view N.L. and observe his demeanor and assess his credibility. The trial judge was aware of the inconsistencies in N.L.'s testimony and was free to believe all, some, or none of his testimony.

**{¶42}** N.L. testified that he fell backwards off his scooter. He stated that he initially lied when he told his mommy, Detective Strickler, and Ms. Justice, the social worker, that Poppy hit him. He demonstrated in court how he held up his hands to stop his fall.

**{¶43}** Ms. Justice, however, testified that N.L. told him that Poppy hit him when she observed his bruises and the mark on his chin. He also demonstrated for her how Poppy hit him.**{¶44}** Furthermore, Dr. Myslemski testified that many of N.L.'s injuries

were not consistent with accidental injuries. Specifically, she testified that she observed no abrasions on his hands that would be consistent with a fall. She also testified that many of his injuries were suspicious due to the quantity of the injuries and their location in the protected areas of the body, i.e. the chin area under the lip, the thighs, the backs of his legs, and the inner upper arm. Dr. Myslemski, therefore, opined that his injuries and his disclosure of what had happened was highly suggestive of nonaccidental injuries.

{¶45} In light of the above testimony and evidence in the record, we do not find this is the exceptional case in which the evidence weighs heavily against Rivera's conviction for domestic violence. Accordingly, Rivera's fifth assignment of error is overruled.

**Venue**

{¶46} In his fourth assignment of error, Rivera argues for the first time that the state failed to prove venue beyond a reasonable doubt. Specifically, he argues that there is no evidence the domestic violence occurred in Cuyahoga County and, therefore, the state cannot sustain a conviction in that county.{¶47} Although venue is not a material element of the offense charged, venue is a fact that must be proved in a criminal prosecution unless it is waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 453 N.E.2d 716 (1983). As such, a defendant waives the right to challenge venue when the issue is raised for the first time on appeal. *State v. Coley*, 93 Ohio St.3d 253, 258, 2001-Ohio-1340, 754 N.E.2d 1129, citing *State v. Campbell*, 90 Ohio St.3d 320, 336, 738 N.E.2d 1178, 1197 (2000); *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977),

paragraph one of the syllabus. In this case, Rivera never challenged venue and, therefore, he waived his right to complain on this basis.

{¶48} Accordingly, Rivera's fourth assignment of error is overruled.

## Probation Officer's Testimony

{¶49} In his sixth assignment of error, Rivera contends that he was denied a fair trial by the trial court's ruling that Rivera's probation officer could testify. We disagree.

{¶50} The state presented the testimony of Rivera's probation officer, Erin Becker, in order to show that Rivera's codefendant, Nichole Langmack, had knowledge of Rivera's abusive conduct toward family members and was, therefore, reckless in allowing N.L. to stay with Rivera. Defense counsel objected, stating that the probation officer's testimony was prejudicial and in violation of Evid.R. 404(B). Over defense counsel's objection, the trial court permitted Ms. Becker to testify. {¶51} Under the Ohio Rules of Evidence, evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character as to criminal propensity. As stated in Evid.R. 404(B), such evidence is inadmissible to prove "the character of a person in order to show action in conformity therewith." The rule, however, permits such evidence to be introduced for other purposes, such as for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).

{¶52} It is well settled in Ohio law that in a bench trial in a criminal case, it is presumed that the court considered only the "relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." *State v. Tate*,

8th Dist. No. 97804, 2013-Ohio-570, ¶ 17, citing *State v. Eley*, 77 Ohio St.3d 174, 181, 1996-Ohio-323, 672 N.E.2d 640; *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987). This presumption "appropriately credits the judiciary with knowledge of the law and the ability to correctly apply it." *Eley* at 181.

**{¶53}** In this case, Rivera has failed to identify anything in the record that would suggest that the trial court considered anything but relevant, material, and competent evidence in arriving at the verdict. Moreover, in overruling defense counsel's objection to the allowance of Ms. Becker's testimony, the trial court stated that it will not consider "anything [Ms. Becker] says in terms of [Rivera], to whether or not in this situation he acted with conformance with those prior bad acts." The court went on to note that while it is aware of the prior convictions because they were stipulated in order to support the charge, it will not use those prior convictions to make a determination as to whether or not Rivera acted in conformity therewith. Finally, in rendering its verdict, the trial court reiterated that Ms. Becker's testimony was considered for the sole purpose for which it was offered: to attempt to show that Rivera's codefendant, Langmack, recklessly abused N.L. when she left him with Rivera.

**{¶54}** Accordingly, Rivera's sixth assignment of error is overruled.

**{¶55}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR