[Cite as *State v. Ellis*, 2013-Ohio-1184.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98538**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## LARRY ELLIS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-560345

**BEFORE:** McCormack, J., Stewart, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** March 28, 2013

**ATTORNEY FOR APPELLANT**

Rick L. Ferrara
2077 East 4th Street
Second Floor
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Steven McIntosh
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

TIM McCORMACK, J.:

**{¶1}** Defendant-appellant, Larry Ellis, appeals from a judgment of the trial court finding him guilty of domestic violence after a jury trial. He claims his conviction is not supported by sufficient evidence and is also against the manifest weight of the evidence. He also claims the trial court erred in failing to transfer this case to the court's mental health docket, and his counsel was ineffective for failing to secure a completed mental health evaluation before proceeding further. Finally, he argues the trial court abused its discretion in not including a mental health component in its sentence. For the following reasons, we affirm his conviction and sentence.

## Substantive Facts and Procedural History

**{¶2}** Ellis was charged with domestic violence, which stemmed from an incident on March 4, 2012, where he allegedly struck Jennifer Hyre ("Hyre"), his long time live-in girlfriend, during an argument over his interactions with a girl on Facebook. Ellis had been convicted of domestic violence for striking Hyre on four prior occasions, and served prison time in 2010 for one of the convictions.

**{¶3}** In this case, he pleaded not guilty and the matter proceeded to a jury trial. At trial, Hyre testified she lived with Ellis since 2006. She described Ellis as having "a lot of mental problems" and having been in and out of mental institutions. On the day of the incident, they argued over a 17-year-old girl he communicated with on Facebook. She asked him to call the girl and terminate the relationship, but he refused. The

argument accelerated and Ellis punched her on the right side of her face and she grabbed him by the collar of his shirt. Because Hyre grabbed him, Ellis said to her "[Y]ou're going to jail. You're going to jail" and proceeded to call the police. Hyre's 15-year-old son, who had been upstairs, heard the commotion and came downstairs. He asked her what happened, and she said "fuckin' asshole again."

{¶4} When the police came, Hyre would not cooperate and refused to provide much information, because she did not want Ellis, who provided the only support for her and her father, to return to jail. She refused to press charges and asked the police to leave. Because Ellis claimed Hyre injured him during the scuffle, the police officer arrested both of them, charging her with disorderly conduct. After serving two days in the jail, she finally provided a written statement to the police.

{¶5} She testified that he had hit her on many prior occasions, and he was charged with and convicted of domestic violence several times. She described him as controlling and aggressive, and testified that "[h]e not only hit me, but he mentally abuses me, [and] he sexually abuses me. He — he does it all."

{¶6} Regarding her injury, she testified that, as the night went on, her eye became puffy and turned black and blue, and it "felt like a golf ball." It took two-and-a-half weeks for the eye to heal.

{¶7} Officer Krems of the Lakewood Police Department testified that he talked to Ellis first when he arrived. Ellis stated that Hyre approached him as he lay on the couch. She ripped a blanket off him, and they got into a physical altercation. Hyre told

the officer briefly that Ellis punched her in the face and she went after him, without much elaboration. He noticed one of her eyes was starting to "swell up pretty well" and Ellis's shirt was slightly torn. The police arrested both parties, because at that time the incident appeared to be a mutual altercation. Hyre's son heard the couple arguing, but did not witness the altercation.

{¶8} Officer Jameson testified that when he arrived, the couple was still arguing, and the officers had to separate them. Ellis told him he got into an argument with his girlfriend, and she attacked him. Ellis claimed he had a cut on his neck, but the officer observed no outward signs of injury, other than some slight redness around his neck. He also noticed Hyre's eye was swollen. Ellis denied touching Hyre in the altercation.

{¶9} Officer Trommer interviewed Hyre when she was in jail and obtained a written statement from her. He interviewed Ellis as well, who indicated he was sleeping on the couch with their three-year-old daughter, and Hyre approached him and grabbed his shirt collar. When asked how she got the black eye, Ellis said she must have punched herself in the face. Officer Trommer acknowledged that in the police report, an officer heard Hyre stating to a friend over the telephone that Ellis punched her three times.

{¶10} Hyre's son testified that he heard the couple argue, which woke him up. He did not witness the incident, but heard Hyre saying, "Why would you hit me? Why would you have done this?"

{¶11} Ellis testified on his own behalf. He stated he was lying on the couch with their daughter. Hyre approached and snatched the blanket off him. He got off the couch to gather his belongings and to get dressed. She started grabbing at one side of his neck and pulling his shirt. He pulled away and then called the police. He denied punching Hyre.

{¶12} The jury found Ellis guilty of domestic violence, and the court sentenced him to 30 months at the Lorain Correctional Institution, with a mandatory term of three years of postrelease control.

{¶13} Ellis now appeals, raising five assignments of error for our review. Under the first assignment of error, Ellis contends his conviction is against the manifest weight of the evidence. Under the second assignment of error, Ellis claims there is insufficient evidence for his conviction. We address sufficiency of the evidence first.

## Sufficiency of the Evidence

{¶14} When considering a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The pertinent inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A sufficiency challenge requires this court to review the record to determine whether the state presented evidence on each of the elements of the offense. This test involves a question of law and does not permit us to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶15} R.C. 2919.25 defines domestic violence. It states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶16} Here, the state produced Hyre's testimony that Ellis hit her in the face during an argument. Both Officers Krems and Jameson testified they observed her eye to be swollen. Officer Krems testified Hyre told him briefly that Ellis punched her during an altercation. She later provided a written statement to Officer Trommer while she was in jail. Her 15-year-old son testified that when he went downstairs, he heard Hyre saying to Ellis, "Why would you hit me?" The evidence, if believed by the jury,

would convince the average mind of the defendant's guilt beyond a reasonable doubt. The second assignment of error lacks merit.

## Manifest Weight

{¶17} Unlike a sufficiency challenge, a manifest-weight-of-the-evidence claim raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin*, 20 Ohio App.3d 175, 485 N.E.2d 717.

{¶18} Furthermore, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A jury is free to believe all, some, or none of the testimony of each witness appearing before it. *Iler v. Wright*, 8th Dist. No. 80555, 2002-Ohio-4279, ¶ 25.

{¶19} Here, Ellis contends his conviction is against the manifest weight of the evidence because Hyre changed her account of the incident, making her testimony not credible.

{¶20} The trial transcript reflects Hyre testified that she was reluctant to cooperate with the police when the officers arrived to investigate the incident, because Ellis provided support for her and her father, and she did not want him to return to jail. She testified that she said "very minimal" to the officers on the night of the incident, and only gave a full account of the incident two days later, when she was in jail. Officer Krems testified she told him that Ellis punched her and she went after him, without providing much detail. Officer Trommer testified that in the police report an officer overheard her stating to her friend over a telephone call that she was punched three times. Ellis, on the other hand, testified he never struck her.

{¶21} We recognize that there is some inconsistency in the testimony presented. However, the credibility of the witnesses and the resolution of any conflict in the testimony rests with the jury. The victim testified the defendant struck her, and her testimony was corroborated by the police officers on the scene who observed her eye to be swollen. The jury found her testimony to be credible, and we may not substitute our own judgment for that of the jury. The first assignment of error is without merit.

### Mental Health Issues

{¶22} The remaining assignments of error all concern Ellis's mental health issues. Under the third assignment of error, Ellis contends the trial court erred in failing to

account for his mental health disorders in sentencing him. Under the fourth assignment of error, Ellis claims that the trial court erred in failing to transfer him to the mental health docket. Under the fifth assignment of error, he claims his trial counsel was ineffective for failing to wait for a mental health evaluation before proceeding to trial. We address the assignments in the order that facilitates our analysis.

{¶23} Ellis had been convicted of domestic violence on four prior occasions. From our review of the judgment of conviction in these prior cases, which are part of the instant record, Ellis appeared to suffer certain mental health issues, although it is unclear from the record the exact nature of his mental ailments. In October 2007, he was placed on two years of probation for a conviction of domestic violence, and the conditions of probation included his entering into an anger management and domestic violence program, and taking all prescribed medications. In April 2008, he was sentenced to 180 days in jail for the same offense, which was suspended, and the court again ordered him to enroll in an anger management and domestic violence program, and to take all prescribed medications. In November 2008, he was sentenced to 30 days in jail, and placed in one year of community control sanctions. Again he was ordered to take all medications and to follow all treatment directives.

{¶24} The record reflects a fourth judgment entry, dated February 8, 2010, which reflects that he pleaded guilty to domestic violence and was referred to the county probation department for a presentence investigation report ("PSI"). He was also referred to the court psychiatric clinic pursuant to R.C. 2947.06(B) for psychiatric

recommendations for purposes of sentencing. The record for the present case does not contain the psychiatric report, the PSI, or the entry of sentence relating to the 2010 case. The testimony at trial, however, indicates he served jail time for the conviction; it is unclear whether the sentence in the 2010 case contained a mental health component as in the prior cases.

{¶25} At a May 2, 2012 pretrial, his counsel mentioned he had made a request for a referral to determine whether Ellis qualified for the mental health docket. In response, the court stated, "Could we make sure the court clinic is aware of the history referenced by [defense counsel]?" The transcript did not show any follow-up discussion on this, however.

{¶26} After Ellis was found guilty of domestic violence by the jury, the defense counsel asked the court to order a new PSI before proceeding to sentencing, pointing out again Ellis's mental health issues, and suggesting that "community-based local incarceration" would be more suitable for Ellis. The trial court decided a new PSI would be unnecessary, noting that the 2010 PSI on file was only two years old and that Ellis's "history doesn't change." The court acknowledged that Ellis had been hospitalized over ten times and that he has seen mental health professionals at Northcoast for a number of years. The court emphasized that Ellis's mental health situation had not been ignored by the court and that it was an issue he "has dealt with forever."

{¶27} The court imposed a 30-month jail term and three years of mandatory postrelease control. The court advised Ellis that he could file a motion for judicial

release in the future, and the court would then entertain a report regarding the defendant's conduct in the prison and consider a transitional program that would incorporate a treatment component. In its sentence entry, the court also stated: "Defendant to receive a mental health assessment upon arrival at the institution."

<u>**The Request to Transfer to Mental Health Docket**</u>

{¶28} Having reviewed the record, we now address the issue of whether the trial court erred in failing to transfer Ellis to the mental health docket.

{¶29} Rule 30.1 of the Local Rules of the General Division of the Common Pleas Court of Cuyahoga County provides the following:

Rule 30.1. Assignment of criminal cases to mental health dockets

(A) Definitions.

Mental health dockets shall include cases where the defendant has a confirmed serious mental illness or is mentally retarded as defined below:

(1) For purposes of this section, a defendant is deemed to have a confirmed serious mental illness if within the previous six months prior to arraignment, there is a clinical diagnosis of a severe mental illness with a psychotic feature.

* * *

(C) Assignment of cases to mental health dockets.

(1) Except as otherwise provided for in paragraph (D) of this rule, at the arraignment there will be a random assignment of mental health cases to judges presiding over the mental health dockets. Assignments will occur through a process either manual or electronic, which ensures the equitable distribution of cases among mental health dockets where the defendant:

(a) has a confirmed serious mental illness or is mentally retarded as defined in A(1) and A(2) above; and

* * *

(2) In cases where it is determined after arraignment that a defendant has a confirmed serious mental illness or is mentally retarded as defined in A(1) or A(2) above, the Administrative Judge *may* reassign the case to a mental health docket through random assignment.   (Emphasis added.)

**{¶30}** Through the use of "may," the rule authorizes, but does not mandate, a transfer of a defendant to the common pleas court's mental health docket under certain circumstances.   Loc.R. 31(C)(2).   Here, the record reflects the trial court was aware of Ellis's mental health issues, but did not deem a transfer necessary.   As we analyze in the following, Ellis fails to demonstrate that the trial court's failure prejudiced him and created a plain error.

**{¶31}** Because Ellis alleges he suffers mental health problems, we begin with a review of his competence to stand trial.   A defendant is presumed competent to stand trial and therefore carries the burden of establishing incompetence.   *State v. Hunter*, 8th Dist. No. 89456, 2008-Ohio-794, ¶15-16.   Absent an abuse of discretion, a competency determination by the trial judge will not be disturbed on appeal.   *State v. Clark*, 71 Ohio St.3d 466, 469, 1994-Ohio-43, 644 N.E.2d 331.

**{¶32}** Here, although Ellis's trial counsel asked the court for an interview at the May 14, 2012 pretrial to determine if he was eligible for a transfer to the mental health docket, it appears from our reading of the record that the request was made so that the court could accommodate his mental health at the *sentencing* stage of the proceedings. His competence to stand trial was never raised as a potential issue.

{¶33} The May 14, 2012 hearing transcript reflects the court engaged in an extensive colloquy with Ellis regarding the charge against him, the trial proceedings, and the option of a guilty plea in exchange for a reduced charge. His counsel also reported to the court that he had discussed extensively the state's plea offer with Ellis as well as the potential consequence of a trial, and Ellis indicated he wanted to proceed to trial. Based on the record, the trial court was thoroughly aware of Ellis's mental health problems, and did not find his competence to stand trial an issue.

{¶34} Our reading of the transcript similarly confirms that he was able to assist in his defense. At the May 14, 2012 pretrial, he raised speedy trial issues on his own. At trial, he testified on his own behalf, denying striking Hyre. Although Ellis spoke on several occasions during the trial without permission, the record before us does not contain evidence that casts doubt on Ellis's rationality and ability to understand the nature of the proceedings. It also appeared that he had the ability to consult with his counsel and they engaged in meaningful communications prior to trial.

{¶35} Therefore, we conclude the trial court did not commit an error, plain or otherwise, in not transferring Ellis to the mental health docket. The record does not reveal indicia of Ellis's lack of competence to stand trial or inability to assist in his defense, despite any potential mental health issues. He fails to demonstrate prejudice. The fourth assignment of error is without merit.

{¶36} Under the fifth assignment of error, Ellis claims his trial counsel should have waited for a mental health evaluation before proceeding to trial. Ellis argues his counsel's failure to do so constituted ineffective assistance of counsel.

{¶37} In order to prevail on the ineffective assistance of counsel claim, a defendant must demonstrate (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶38} A mental heath evaluation is but one of the factors taken into account by the trial court in a competence determination. *See State v. Rubenstein*, 40 Ohio App.3d 57, 531 N.E.2d 732 (8th Dist.1987), paragraph two of the syllabus. Because the trial court here was aware of Ellis's mental health issues and because the record does not indicate Ellis's mental health affected his ability to assist in his own defense, his trial counsel cannot be faulted for not insisting on a psychiatric report. Moreover, Ellis fails to demonstrate prejudice; that is, to show that if his counsel had insisted on waiting for the result of a mental health evaluation, the outcome of this case would have been different. The fifth assignment of error is without merit.

## Sentence

{¶39} Finally, we consider the claim that the trial court abused its discretion in failing to include a mental health component in his sentence.

**{¶40}** At sentencing, the state asked for a prison term at the upper end of the statutory range, emphasizing that Ellis had four prior convictions of domestic violence and there were additional police reports of domestic violence that were not prosecuted because the victim was unwilling to bring charges. His counsel, on the other hand, stated Ellis's mental health issues had not been addressed and his condition was left untreated since his last conviction. He proposed community-based local incarceration for Ellis.

**{¶41}** Before sentencing Ellis, the court stated it considered the overriding purposes and principles of felony sentencing under R.C. 2929.11, including the need to protect the public and punish the offender. The court also stated it considered the statutory factors under R.C. 2929.11, including the seriousness of the offense and recidivism of the defendant. Regarding recidivism, the court noted Ellis's extensive criminal record, which included robbery, burglary, attempted receiving stolen property, drug abuse, disorderly conduct, in addition to four convictions of domestic violence. The court also addressed the seriousness factors, noting he caused physical harm to the victim, used his relationship with the victim to facilitate the offense, and committed the offense in the vicinity of a child.

**{¶42}** R.C. 2947.06 permits a trial court to order a PSI or psychological report to aid the court in sentencing. Regarding the former, the statute states, "The court on its own motion may direct the department of probation of the county * * * or its own regular probation officer, to make any inquiries and presentence investigation reports that the

court requires concerning the defendant." R.C. 2947.06(A)(1). Regarding psychological reports, it states, "The court may appoint * * * psychiatrists to make any reports concerning the defendant that the court requires for the purpose of determining the disposition of the case." R.C. 2947.06(B).

{¶43} The use of the word "may" in the statute indicates the ordering of these reports is not mandatory but within the court's discretion. Here, the trial court had in its possession the 2010 PSI, which described Ellis's criminal record. The court was also aware of Ellis's mental health issues, which were reflected in the 2010 PSI and the previous judgments of convictions. For his previous convictions of domestic violence, the court had ordered him to enter anger management or domestic violence programs, and to take all prescribed medications. However, there was no indication that he attended the mental health programs as ordered; his counsel also reported to the court that he had not been taking medications.

{¶44} The transcript reflects that the court specifically commented that there are instances where the inclusion of a rehabilitative component in a sentence is appropriate, but in this case the court would not consider it. The court, however, advised Ellis that he could file a motion for judicial release, and it would entertain a report regarding his conduct in the prison and consider a transitional program incorporating a treatment component. In addition, in its sentence entry, the court ordered that Ellis receive a mental health assessment upon arrival at the prison. Given this record, we do not find

the court abused its discretion in fashioning an appropriate punishment in this case. The third assignment of error is without merit.

**{¶45}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MELODY J. STEWART, A.J., and
MARY J. BOYLE, J., CONCUR

KEYWORDS:

*State of Ohio v. Larry Ellis,* Appeal No. 98538

The trial court did not err in not transferring a defendant to the court's mental health docket where the record reflects the defendant was competent to stand trial and able to assist in his defense. The defendant's conviction of domestic violence is supported by sufficient evidence and the manifest weight of the evidence.