[Cite as *State v. Payne*, 2013-Ohio-3729.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99318

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# KEVIN PAYNE

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-568298

**BEFORE:** McCormack, J., Boyle, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** August 29, 2013

**ATTORNEY FOR APPELLANT**

Joseph Vincent Pagano
P.O. Box 16869
Rocky River, OH 44116


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Margaret A. Troia
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Kevin Payne, appeals from the judgment of the Cuyahoga County Court of Common Pleas that convicted him of two counts of robbery and sentenced him to four years in prison. He claims his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. He also challenges the court's imposition of court costs. After a careful review of the record, we affirm Payne's convictions of robbery. We reverse, however, the court's imposition of court costs and remand the matter for further proceedings consistent with this opinion.

## Substantive Facts and Procedural History

{¶2} Payne, 27, was indicted for two counts of robbery: the first count charged him with robbery, in violation of R.C. 2911.02(A)(2), which was accompanied with a notice of prior conviction and with a repeat violent offender specification; the second count charged him with robbery, in violation of R.C. 2911.02(A)(3). The indictment stemmed from a robbery incident on August 14, 2012, in East Cleveland. Payne waived a jury trial. At the bench trial, the state presented the testimony of the victim, the victim's girlfriend, and the police officer who chased him on foot and quickly apprehended him minutes after the victim reported the incident.

## The Victim's Testimony

{¶3} The sole witness to the robbery is the victim, Kevin Hampton. He testified to the following events on the evening of the incident: A friend dropped him off at Butternut Apartments, an apartment complex in East Cleveland, where his girlfriend, Ericka Garrison, lived. There were about five people standing at a corner and drinking when he arrived. He called Ericka to let him in, but she was at the Family Dollar two blocks away. While he waited for her in the parking lot outside the building's main entrance door, he talked to a man about finding a cable installer for his girlfriend's apartment. Another man, whom Hampton did not know and later identified in court as Payne, walked up and approached both of them. Payne told them "he got loud," meaning a high potency of weed. Hampton told Payne he did not "mess around," but the other man went inside the apartment building with Payne.

{¶4} According to Hampton's testimony, minutes later, Payne came out of the building and said "Damn, I'm gonna leave," because he found out East Cleveland police were in the nearby Shaw High School parking lot. Payne said he was "scared to leave" because he "shot at the police before." Hampton started to walked away, and Payne went back inside the building.

{¶5} Hampton testified that a minute later, Payne emerged from the building with a gun and pointed it at Hampton's chest, demanding him to give him "everything," saying he didn't have a problem shooting him and "going back to New York." Hampton testified that he felt "scared, shocked, and overwhelmed." Although he had $40 with

him, he did not give Payne the money, because, right at that moment, he spotted his girlfriend Ericka's vehicle in the turning lane waiting to pull into the apartment complex. Payne turned to look in Ericka's direction as well. Just then, they heard police sirens going off. Payne promptly walked away. Hampton ran past him to the police vehicle to report the robbery.

{¶6} As it happened, Officer Telegdy was activating the sirens to pull a driver over for a traffic violation in front of the apartment complex. Hampton told him he was just robbed at gunpoint and pointed to Payne, who was walking across the street. Hampton then watched from the apartment complex as the officer chased Payne on foot through a residential street and a gas station. After the police apprehended Payne, Hampton went inside his girlfriend's apartment to avoid the police's attention, because he had an outstanding warrant for a traffic offense. Shortly after, however, he decided to call the police to report the robbery, an audio recording of which was submitted as a trial exhibit. His girlfriend then drove him to the police station to provide a written statement of the incident.

{¶7} Hampton acknowledged he was convicted of drug offenses in 2008 and in 2009. There was a pending charge of tampering with records against him, unrelated to this case.

### The Police Officer's Testimony

{¶8} Officer Telegdy, a patrol officer with the East Cleveland Police Department, testified that at around 9:15 p.m. on August 14, he initiated a traffic stop in front of the

Butternut Apartments. Before he exited his police vehicle to talk to the other vehicle's driver, Hampton approached Officer Telegdy and stated he was just robbed at gunpoint in the parking lot of the apartment complex. Hampton identified Payne as the robber. Payne was walking across the street to a gas station. The officer quickly pulled into the gas station. Payne pulled down his hoodie to cover his face. Officer Telegdy exited his vehicle and said to Payne, "Police. Stop, I want to talk to you." Payne took off, and the officer ran after him.

{¶9} Payne ran into a residential street behind the gas station. He fell when he jumped over a fence, but got back up and continued running, back toward the gas station. When he jumped over the fence, the officer heard a noise that sounded like metals clashing. The officer jumped over the fence as well and continued his pursuit. Payne was apprehended when he slipped in front of a house behind the gas station. The entire foot chase lasted less than two minutes. Officer Telegdy searched Payne and found several pairs of latex gloves. He then returned to the spot where Payne fell while jumping over the fence, and found a gun broken in two pieces — the top of the slide had come off the gun. It turned out to be a starter pistol not capable of shooting a projectile.

### Girlfriend's Testimony

{¶10} Ericka Garrison, Hampton's girlfriend, testified that Hampton called her while she was at the Dollar Store. She was in the turn lane waiting to turn into her apartment complex when she saw a police vehicle pulling a vehicle over. She also saw

Hampton in the parking lot, "standing there with someone like they were talking," but their facial expressions "didn't look like it was anything good." As her vehicle pulled into the parking lot, Hampton "goes running across the front of the parking lot to the police car," and seconds later, the other man ran as well. She went inside her apartment. Shortly after, Hampton came inside as well, telling her "[t]his guy tried to rob me." After he made the 911 call, she drove him to the police station to make a report.

{¶11} The trial court found Payne guilty of both counts of robbery, and merged the two counts for sentencing. At the sentencing hearing, the court noted that he was convicted of aggravated robbery twice in 2005 and committed the instant robbery within a year of being released from prison. The court imposed four years of imprisonment. Although the court did not mention court costs at the sentencing hearing, it imposed court costs in its sentencing entry.

{¶12} Payne now appeals. He raises three assignments of error. He claims his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence, and that the trial court erred by ordering him to pay costs.

## Sufficiency of Evidence

{¶13} Under the first assignment of error, Payne claims his convictions of robbery are not supported by sufficient evidence. When reviewing a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A sufficiency challenge requires us to review the record to determine whether the state presented evidence on each of the elements of the offense. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541.

{¶14} Here, Payne was convicted of two counts of robbery as defined in section (A)(2) and section (A)(3) of R.C. 2911.02, respectively. Under section (A)(2), a person commits a robbery if the person, in attempting or committing theft, "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another." Under section (A)(3), a person commits a robbery, if they, in attempting or committing theft, "[u]se or threaten the immediate use of force against another."

**{¶15}** The state presented the testimony from the victim, who testified Payne pointed a gun at him, demanded "everything," and threatened to shoot him. A police officer happened to be nearby, and the victim reported the incident to him. The police officer chased Payne on foot through a residential area and apprehended him within minutes. Shortly afterward, the officer also recovered a gun broken into two pieces from an area where Payne jumped over a fence but fell. A noise of metals crashing was heard by the officer. The victim identified Payne in court as the robber and also identified the gun retrieved by the officer as the gun used by Payne. Although the gun turned out to be a starter pistol not capable of firing a projectile, the victim testified he was in fear when the gun was pointed at him. "The use or threat of immediate use of force element of the offense of robbery, as expressed in R.C. 2911.02(A), is satisfied if the fear of the alleged victim was * * * likely to induce a person to part with property against his will * * *." *State v. Davis*, 6 Ohio St.3d 91, 451 N.E.2d 772 (1983), paragraph one of the syllabus.

**{¶16}** As such, the testimony presented by the state, *if believed*, would convince the reasonable mind that Payne committed robbery as defined in R.C. 2911.02(A)(2) (threatening to inflict physical harm) and (A)(3) (threatening the immediate use of force). Viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of robbery as defined in these two sections proven beyond a reasonable doubt. Therefore, the first assignment of error lacks merit.

## Manifest Weight

{¶17} Under the second assignment of error, Payne claims his convictions of robbery are against the manifest weight of the evidence. Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue.

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 511, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

{¶18} In evaluating a manifest weight claim, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

{¶19} Here, although no one but the victim witnessed the robbery, the victim's testimony was largely corroborated by two other witnesses despite minor discrepancies. The testimony included that of the police officer who pursued Payne on foot and

apprehended him minutes after the victim reported the incident. Although the victim had prior felony drug convictions and a pending charge of tampering with records against him, his credibility rests solely with the trier of fact, who was free to believe all or a part of his testimony. We will not substitute our own judgment in place of the factfinder's assessment of witness credibility.

{¶20} After reviewing the entire record, therefore, we conclude this is not one of the exceptional cases where the evidence weighs heavily against the conviction or where the trier of fact lost its way and created a manifest miscarriage of injustice in convicting the defendant. The second assignment of error is without merit.

## Court Costs

{¶21} Under the third assignment of error, Payne claims the trial court erred in ordering him to pay court costs in its judgment entry, without mentioning court costs at the sentencing hearing. This was in error, and the state concedes it on appeal. *See State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278. In *Joseph*, the Supreme Court of Ohio explained that when a trial court failed to orally notify a defendant that it was imposing court costs, such a defendant was unfairly denied the opportunity to claim indigency and seek a waiver of the payment of court costs. *Id*. at ¶ 22. The Supreme Court of Ohio held that the defendant was not entitled to a complete resentencing but that the case should be remanded to the trial court for the limited purpose of allowing the defendant to move the court for a waiver of the payment of court costs. *Id*. at ¶ 23. *See also State v. Roberts*, 8th Dist. Cuyahoga No. 98973, 2013-Ohio-2202.

**{¶22}** Adhering to *Joseph*, therefore, we reverse the portion of the trial court's judgment imposing court costs. The matter is remanded for the limited purpose of allowing Payne to move the court for a waiver of payment of court costs. The third assignment of error is sustained.

**{¶23}** Judgment affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MARY J. BOYLE, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR