[Cite as *State v. Taylor*, 2024-Ohio-5331.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
HARRISON COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

PHILIP J. TAYLOR,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 HA 0002

---

Criminal Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CRI 2023-0024

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Lauren E. Knight*, Harrison County Prosecutor, for Plaintiff-Appellee and

*Atty. Christopher P. Lacich*, Roth, Blair, for Defendant-Appellant.

Dated: November 6, 2024

**Robb, P.J.**

{¶1} Appellant, Philip J. Taylor, appeals the March 20, 2024 judgment convicting him of one count of domestic violence. Appellant argues the evidence was insufficient to support his conviction and his conviction is against the manifest weight of the evidence. Appellant also claims his trial counsel was ineffective for failing to file notice of his claim of self defense and the trial court erred by failing to provide the self-defense jury instruction. For the following reasons, we affirm.

Statement of the Facts and Case

{¶2} Appellant was indicted in April of 2023 and charged with one count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(1) and (D)(1)(a); a second count of felonious assault, a second-degree felony in violation of R.C. 2903.11(A)(2) and (D)(1)(a); and one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A), with a repeat violent offender specification in violation of R.C. 2929.01 due to a prior murder conviction in 1983. (April 14, 2023 Indictment.)

{¶3} Appellant was arraigned in April of 2023 and entered a plea of not guilty. The court set a motion deadline, discovery deadline, and an August 8, 2023 trial date. The court also appointed counsel to represent Appellant. Appellant's attorney demanded discovery and was granted permission to secure a competency evaluation to assess his mental condition at the time the offense was committed.

{¶4} The court subsequently ordered the report to be sealed and found Appellant was able to appreciate the charges against him and assist in his defense. Appellant indicated he wanted new counsel, and the court advised him to request new counsel in writing. The court returned the case to its active docket and reset trial to January of 2024. (September 27, 2023 Judgment.)

{¶5} Appellant's first counsel of record moved to withdraw in December of 2023. (December 19, 2023 Motion to Withdraw.) New counsel was appointed the next day and moved for discovery and requested a bill of particulars. Appellant's jury trial was reset to March 13, 2024.

{¶6} Appellant then filed a motion in limine seeking to prohibit the state from mentioning his prior murder conviction pursuant to Evid.R. 404(B). (February 28, 2024.) The court granted the motion and prohibited the state from introducing evidence in this regard, unless Appellant testified or presented character evidence. (March 7, 2024 Judgment.)

{¶7} The matter proceeded to trial. Jason Laponte testified first. Laponte is a Washington Township Fire Department EMT. He was asleep when he received a call about a stabbing. When Laponte arrived at the scene, he was met by Appellant, Philip Taylor. Appellant was distraught and asked Laponte to help save his brother.

{¶8} Appellant's brother, Charles Taylor, was upstairs inside the home. He had several lacerations across his abdomen. Some were an inch deep and eight to nine inches long. Charles told Laponte that his brother had cut him with a box cutter. (Trial Tr. 79-84.)

{¶9} Michelle Moodie, a paramedic with the Hopedale Fire Department, testified she responded to a call about a stabbing. The patient was in an ambulance when she arrived. She saw several deep wounds, and one had fatty tissue exposed. She decided the man needed to be life flighted to secure medical treatment. Moodie was asked how often she sees patients with self-inflicted stab wounds. She said "maybe 25%" are self-inflicted, but those are usually not deep stab wounds and there are usually not multiple stab wounds when they are self-inflicted. Moodie thinks Charles had at least five stab wounds. (Trial Tr. 86-91)

{¶10} Charles Taylor also testified. He is Appellant's brother. At the time of the stabbing, Charles lived in a home with his stepfather, his stepfather's fiancé, his younger brother, and Appellant. Charles said he lived there for about four to five years without any physical altercations. His older brother, Appellant, moved in because he was having some problems. On the day of the incident, Appellant woke up Charles at about 4:30 a.m. Appellant was drinking a bottle of liquor in Charles' bedroom. (Trial Tr. 93-97.)

{¶11} Charles recalled he asked where Appellant had been all night, which agitated Appellant. Charles described Appellant as the aggressor, and said he punched me, so I punched him back. He then explained:

[Appellant] came up off the floor and he lunged into me and when he lunged into me[,] I slipped on a banana. . . . There was a banana in the doorway. I slipped on the banana when he grabbed me and lunged into me. We hit the doorway and I thought he was hitting me in the side. He wasn't hitting me. He was gutting me with that razor knife he had. . . . I looked down, I seen the blood and then I seen the knife coming out of my skin the final time.

(Trial Tr. 99-100.)

{¶12} Charles said he did not want to fight, and Appellant always had a box cutter with him. Charles watched Appellant put the box cutter back in his pocket and go downstairs.

{¶13} Charles stated Appellant "cut my gut sack" and I could "see my guts." He was life-flighted to a hospital in Pittsburgh. He spent three to four days in the hospital. He still has occasional pain. Charles showed four scars on his abdomen during trial. (Trial Tr. 98-104.)

{¶14} On cross-examination, Charles agreed he is on disability. At the time of the altercation, he was working under the table driving a van. Charles denied telling anyone that Appellant was punching himself in the face. (Trial Tr. 108-119.)

{¶15} Deputy Saylor's body camera footage was played during Charles' testimony. During the recording, Charles can evidently be heard saying Appellant hit himself. Charles denies having possession of a knife during the altercation. (Trial Tr. 120-128.)

{¶16} Appellant and Charles' stepfather, Michael, also testified. Michael said Appellant was living with him, his fiancé Christine, their ten-year-old son, and Charles at the time of the incident.

{¶17} On the day of the altercation, Michael woke up to yelling and heard Charles say "he cut me." Michael exited his bedroom and saw Appellant standing over Charles, who was on the ground. Michael said "Phil was over top of him, had him by his T-shirt and was doing something. . . . When I hollered, he turned toward his right and put something in his pocket. . . . It looked like a razor knife or something of that nature." When asked if Appellant could have been putting his glasses in his pocket, Michael said

no because Appellant was wearing his glasses. Michael then said Appellant went downstairs and exited the home. Christine locked the door behind him. Michael said he had previously seen Appellant with a fold-up razor knife a "couple times." (Trial Tr. 134-140.)

**{¶18}** On cross-examination, Michael agreed he testified at the preliminary hearing, but did not recall his testimony there. At that hearing, Michael stated he did not see Appellant with a knife, whereas, during trial Michael said he saw Appellant put the knife in his pocket. (Trial Tr. 147-148.)

**{¶19}** Christine also testified at trial. She recounted being woken up by Appellant entering the home at approximately 4:30 a.m. She was sleeping on the downstairs couch at the time. She said Appellant was noisy and agitated. Christine woke up a second time to a commotion. She heard the brothers arguing about "who started it" and remembers Appellant going back upstairs to retrieve his cell phone before going outside. She locked the door because she was afraid. (Trial Tr. 156-161.)

**{¶20}** Deputy Ben Chaney testified he was at the scene of the incident. He said Appellant smelled of alcohol. Chaney performed the pat down search of Appellant and said he had no weapons and no visible wounds. Appellant denied cutting and stabbing his brother. (Trial Tr. 192.)

**{¶21}** Detective Sergeant Knight of the Harrison County Sheriff's Office also testified. He took photos of Appellant's hands after Appellant was in handcuffs. Appellant had blood on one of his index fingers. The photo was introduced at trial. Appellant told Knight that Charles cut himself with his own knife. (Trial Tr. 207-221.)

**{¶22}** Two witnesses testified for the defense. Appellant's childhood friend Mary Withrow testified that she has known him since he was 14 years old. She said Appellant lived with her and her husband in Maryland for about 18 months without incident. She denied asking Appellant to leave her home. (Trial Tr. 293.)

**{¶23}** Mary said she "did not know" Appellant to carry a box cutter. She said he was left-handed. Mary also knew Appellant's brother Charles. She said Appellant is honest, but Charles does not have a reputation for being honest. She has known both since they were all teenagers. (Trial Tr. 296-297.)

**{¶24}** Appellant testified on his own behalf. He moved to Ohio in 2023 to get away from a "bad situation," which he described as a relative's home with drugs and guns. Appellant moved in with his brother Charles, their stepfather Michael, Michael's fiancé, and their son.

**{¶25}** Appellant said he was employed, paying rent, and had loaned his brother Charles money. Charles wanted Appellant to share a room with him so they could watch television together. Appellant had an alarm set to wake up Charles at 5 a.m. because Charles had a hard time hearing alarms.

**{¶26}** According to Appellant, Charles was unemployed when he first moved in and repeatedly asked Appellant for money. Charles threatened to "mess up" Appellant's probation if he did not comply with Charles' requests. Appellant worked afternoon shift, and explained how he would delay going home to avoid being interrogated by Charles.

**{¶27}** The week of the altercation, Appellant had decided to relocate to Buffalo. He had already told Charles he was moving, and his things were packed. Appellant said Charles was very upset he was leaving. (Trial Tr. 331-333.)

**{¶28}** On the morning of the altercation, Appellant woke up Charles. Charles wanted Appellant to drink a shot of liquor with him, so he did. When Appellant refused to take a second drink, Charles became agitated saying Appellant thought he was "better than" him. According to Appellant, Charles initiated the fight by hitting him while Appellant was in a chair in the bedroom. Appellant got up to leave the bedroom and the situation, and he said he was backing up when Charles slapped Appellant, knocking his hat and glasses off.

**{¶29}** Appellant said Charles was the aggressor and had a knife. Appellant was backing away from Charles, leaving the shared bedroom, and attempting to go to his own room. Appellant admits to pushing Charles and "pinning his arm" against him. Appellant was holding Charles against totes or bins that were stacked in the hallway. Appellant denies having a knife or cutting his brother. Appellant thinks Charles cut himself when Appellant was pushing his arm away and when Charles was still swinging at Appellant with the knife. (Trial Tr. 334-346.)

**{¶30}** Appellant recalled seeing blood on Charles, so he called for Mike and Christine. He said Mike came out of his room with a gun and was threatening to shoot

Case No. 24 HA 0002

Appellant. So Appellant went outside and called 911. Appellant waited for the police and paramedics to arrive. Appellant said if he had done something wrong, he would not have stayed. (Trial Tr. 346-348.)

**{¶31}** Defense counsel argued in his closing argument that Charles was not a credible witness. Counsel urged the jury to consider how Charles had changed "his story" and how Charles could be heard in body camera footage telling officers that Appellant punched himself in the face. Defense counsel also argued that Appellant should be found not guilty since Charles cut himself when Appellant pushed on his knife-wielding arm while Charles was swinging it at Appellant. (Trial Tr. 400-409.)

**{¶32}** The jury returned its verdict and found Appellant not guilty of count one and two, the two felonious assault charges, but found him guilty of the domestic violence charge in violation of R.C. 2919.25(A). (March 15, 2024 Judgment.)

**{¶33}** Appellant was later sentenced to 180 days local incarceration with 364 days of jail-time credit. The court also directed him to sign a no contact order and ordered Appellant was banned from possessing a firearm or other dangerous ordnance. (March 20, 2024 Judgment.)

**{¶34}** Appellant raises four assignments of error.

<u>Sufficiency and Manifest Weight of the Evidence</u>

**{¶35}** We address Appellant's first and fourth assigned errors collectively, which assert:

"[No. 1] The trial court erred and abused its discretion when it failed to grant the defendant's Rule 29(A) motion for the evidence to convict him of domestic violence was legally insufficient."

"[No. 4] The jury's verdict was against the weight of the evidence."

**{¶36}** Whether evidence is legally sufficient to sustain a verdict is a question of law, which appellate courts review de novo. *State v. Thompkins*, 78 Ohio St.3d 380 (1997); *In re J.V.*, 2012-Ohio-4961, ¶ 3. A challenge on sufficiency grounds involves the state's burden of production rather than its burden of persuasion. *Thompkins*, *supra*, at 549 (Cook, J., concurring).

**{¶37}** On appeal, we determine whether the evidence presented, viewed in a light most favorable to the prosecution, allows a rational trier of fact to find the essential

elements of the crime established beyond a reasonable doubt. *State v. Dent*, 2020-Ohio-6670, ¶ 15. We must view the evidence and all reasonable inferences in favor of the state. *State v. Goff*, 1998-Ohio-369 (1998).

**{¶38}** On the other hand, a manifest weight review requires us to review the evidence and determine whether this is an exceptional case in which it is patently apparent that the jury lost its way. *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). The reversal of a jury's verdict on manifest weight grounds requires a unanimous concurrence of all three judges. *Id.*

> The . . . weight of the evidence addresses the evidence's effect of inducing belief. . . . In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's? . . . [A]lthough there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. . . . 'When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony.'

*State v. Wilson*, 2007-Ohio-2202, ¶ 25.

**{¶39}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass,* 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. "A jury is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Ellis,* 2013-Ohio-1184, ¶ 18 (8th Dist.), citing *Iler v. Wright,* 2002-Ohio-4279, ¶ 25 (8th Dist.).

**{¶40}** As stated, Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶41}** Appellant urges us to conclude that his conviction is not supported by sufficient evidence since the knife was not located, there were no eyewitnesses to the altercation, and since Appellant did not flee the scene but stayed and called 911. We disagree.

**{¶42}** Although there were two differing versions of the fight, there was more than sufficient evidence showing Appellant knowingly caused physical harm to his brother.

Charles testified Appellant was the aggressor and Appellant punched him first. Charles also described how Appellant cut him in the abdomen several times during the exchange. It is undisputed the brothers lived together at the time. Thus, upon viewing the evidence presented in a light most favorable to the prosecution, we find that a rational trier of fact could find the essential elements of the crime established beyond a reasonable doubt. Accordingly, Appellant's first assigned error lacks merit.

{¶43} As for Appellant's manifest weight of the evidence argument, we conclude this is not an exceptional case and do not disagree with the jury's resolution of the evidence. As stated, both men testified and gave competing views of the fight. Appellant said Charles was the aggressor and he inadvertently cut himself with the knife he was yielding. Meanwhile, Charles described Appellant as the aggressor and stated Appellant sliced open his abdomen.

{¶44} It appears the jury evidently believed Appellant's version of the fight, at least to some extent, since it found him not guilty of the two felonious assault charges. Notwithstanding, it found Appellant guilty of domestic violence. We do not disagree with the jury's conclusion. Although there were varying versions of the altercation, the jury was in the best position to view the evidence and assess credibility based on aspects of testimony not readily captured by a record on appeal. *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 80 (1984) (appellate courts must defer to factfinder's credibility determinations because the jurors can best view and determine witness believability based on body language, eye contact, and voice inflections).

{¶45} Based on this record, we do not find the jury lost its way. Accordingly, Appellant's fourth assigned error is overruled.

<u>Self Defense Arguments</u>

{¶46} Appellant's second assignment of error asserts:

"[2.] The trial court committed reversible error and abused its discretion when it failed to instruct the jury on self-defense, after trial counsel requested the same and the evidence supported such an instruction."

{¶47} Appellant contends the jury should have been given the burden-shifting self-defense instruction because Appellant presented evidence that he used reasonable and proportional force to defend himself. Appellant testified he was attacked by his brother

and Charles caused the physical altercation during which Charles was stabbed or slashed. Although Appellant was not certain how Charles was cut, Appellant denies cutting him or having control or possession of the utility knife that day. Thus, Appellant claims that both jury instructions should have been given (deadly force as well as non-deadly force) since it is unclear whether the force used in this case was deadly or not.

**{¶48}** We review a trial court's refusal to give a requested jury instruction under the abuse of discretion standard. *State v. Adams*, 2015-Ohio-3954, ¶ 240.

**{¶49}** R.C. 2901.05(B)(1) states in part:

> A person is allowed to act in self-defense. . . If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, . . . the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

**{¶50}** The trial court denied Appellant's request for the self-defense instruction since it was not sought 30 days before trial in compliance with Crim.R. 12.2, which states in part:

> Whenever a defendant in a criminal case proposes to offer evidence or argue self-defense, . . . the defendant *shall*, not less than thirty days before trial in a felony case . . ., give notice in writing of such intent. The notice shall include specific information as to any prior incidents or circumstances upon which defendant intends to offer evidence related to conduct of the alleged victim, and the names and addresses of any witnesses defendant may call at trial to offer testimony related to the defense. If the defendant fails to file such written notice, *the court may exclude evidence* offered by the defendant related to the defense, unless the court determines that in the interest of justice such evidence should be admitted.

(Emphasis added.) The notice requirement in Crim. R. 12.2 was a response to the change in the law that shifted the burden of production to the prosecution to establish a defendant did not act in self-defense. 2022 Staff Notes to Crim. R. 12.2.

Case No. 24 HA 0002

**{¶51}** Defense counsel conceded he did not file the requisite notice in Appellant's case, indicating he deemed it unnecessary because this was not the typical case of self-defense. The defense changed its position mid-trial. The issue of self-defense was discussed out of the jury's presence and after the close of evidence and the denial of the defense's renewed motion for an acquittal. Defense counsel explained why he chose not to file a Crim.R. 12.2 notice, stating:

> Your Honor, to be clear on this matter, the court's correct I did not file a notice of self-defense. To me, the way I was trained, self-defense is when you are admitting to essentially that the State is correct that yes, I used a gun or I used a knife, and then you're saying I was legally justified doing so because of these circumstances.
>
> . . .
>
> In this case, the defense is saying the alleged victim had the knife and was swinging it. . . . the gist of it is that the victim was swinging at me and I shoved him and that caused [the victim to stab himself.]

(Trial Tr. 389-389.)

**{¶52}** The trial court permitted Appellant to fully develop the evidence and allowed defense counsel to argue in closing remarks that Appellant should be found not guilty if it finds that Charles cut himself. However, the court did not permit the jury instruction; consequently, the burden of proof was not shifted to the prosecution.

**{¶53}** Because Crim.R. 12.2 uses the word "shall," the notice is mandatory and since the requisite notice was not given here, we find no error based on the court's application of the rule. However, despite Appellant's failure to provide the 30-day notice, the court allowed the evidence, which Appellant contends shows he was acting in defense of himself. Crim.R. 12.2 states the court may exclude evidence about a defendant's claimed self-defense; it does not address the corresponding jury instruction.

**{¶54}** The evidence here was already before the jury when the defense requested the instruction. The trial court was not capable of excluding evidence already presented and heard by the jury. We decline to find the trial court abused its discretion. This assignment of error lacks merit.

**{¶55}** Appellant's third assignment of error contends:

"[3.] Trial counsel was ineffective for his failure to file a notice of self-defense as required under Criminal Rule 12.2, and Appellant suffered prejudice, per se, as a result."

"When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness."

*State v. Bradley*, 42 Ohio St.3d 136, 141-42, (1989), quoting *State v. Lytle* (1976), 48 Ohio St.2d 391, 396-397, vacated in part on other grounds (1978), 438 U.S. 910.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. *United States v. Morrison,* 449 U.S. 361, 364-365 [101 S.Ct. 665, 667–68, 66 L.Ed.2d 564] (1981)." *Strickland, supra,* 466 U.S. at 691, 104 S.Ct. at 2066. To warrant reversal, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland, supra,* at 694, 104 S.Ct. at 2068.

*State v. Bradley*, *supra*, at 142.

**{¶56}** Appellant claims his trial counsel's failure to file the Crim.R. 12.2 notice was an error and resulted in substantial prejudice, i.e., his domestic violence conviction. We disagree.

**{¶57}** Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which states: "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

**{¶58}** Neither the state nor the defense detailed what conduct corresponded with which count in the indictment during or before trial.

**{¶59}** As detailed previously, Appellant testified Charles was the aggressor and Charles hit and slapped him first, forcing Appellant to defend himself. Appellant testified

Case No. 24 HA 0002

he defended himself—he acknowledged pushing Charles and pinning down his arm in an effort to defend himself and get away. Appellant testified he does not know exactly how Charles sustained his injuries. Appellant denied cutting his brother. Appellant likewise denied having possession or control over the utility knife.

{¶60} Nevertheless, Appellant surmised that Charles may have cut himself with the knife Charles was holding when Appellant was pushing Charles away and/or pinning him down. Appellant acknowledged this was possible, and the jury evidently believed him in light of its decision finding him not guilty of the two felonious assault charges.

{¶61} Charles, however, described Appellant as the aggressor. He said Appellant punched him first, so Charles punched him back. This occurred before the struggle, which resulted in Charles sustaining stab wounds.

{¶62} As emphasized by the state, Appellant was acquitted of the two felonious assault charges corresponding with Charles' stab wounds such that the jury evidently believed Charles caused these injuries to himself. Thus, regardless of counsel's potential failure to secure the burden-shifting self-defense instruction, Appellant was acquitted of the two charges corresponding with the stab wounds and Appellant's testimony about the struggle.

{¶63} As for the domestic violence charge, Charles testified Appellant punched him first and Appellant was the aggressor. To the contrary, Appellant testified that Charles was the aggressor, and Charles hit and slapped him first. This initial conduct, whichever version believed, immediately preceded the struggle which caused Charles' stab wounds.

{¶64} Because the jury could have based the domestic violence verdict on Charles' testimony that Appellant punched Charles before the two struggled; before Charles was stabbed; and before Appellant's claim of self-defense was applicable, we do not find there is a reasonable probability the result of the proceedings would have been different.

{¶65} Based on the foregoing, we decline to find that counsel's error, if any, resulted in prejudice. *State v. Bradley*, 42 Ohio St.3d 136, 145 (1989) (Absent a showing of prejudice, it is unnecessary to consider whether counsel's actions were deficient). Appellant's third assignment of error lacks merit.

## Conclusion

**{¶66}** Each of Appellant's assignments of error lacks merit, and as such, we affirm the trial court's judgment.

Waite, J., concurs.

Dickey, J., concurs.

[Cite as *State v. Taylor*, 2024-Ohio-5331.]

—————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Harrison County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**